NATIONAL CASH–REGISTER CO. v. LELAND et al. (three cases).

SAME v. WRIGHT et al.

(Circuit Court of Appeals, First Circuit. April 12, 1899.)

Nos. 224–227.

1. FEDERAL PRACTICE — ACTIONS AT LAW — INTERROGATORIES UNDER STATE STATUTES.

Interrogatories addressed to the opposite party in the manner and form prescribed by the Massachusetts statute (Pub. St. c. 167) are not admissible in actions at law in the federal courts, since Rev. St. § 861, declares that the mode of proof in actions at law "shall be by oral testimony and the examination of witnesses in open court, except as hereinafter provided," and the provisions subsequently made (Rev. St. §§ 863–870) relate exclusively to depositions de bene esse, in perpetuam memoriam, or under a dedimus potestatem. Rev. St. § 914, adopting state practice, procedure, etc., in actions at law in the federal courts, does not apply, as congress itself has regulated the particular matter by express legislation.

2. SAME.

The act of 1892 (27 Stat. 7) permitting the taking of depositions in the mode prescribed by the laws of the state in which the federal courts are held was merely intended to simplify the practice of taking depositions, and did not authorize the taking of any depositions in instances not previously authorized by federal statutes. It did not confer any additional right to obtain proofs by interrogatories addressed to the adverse party in actions at law.

3. PATENTS—EXPERT EVIDENCE.

In an action at law an expert in a patent case may not be permitted to state that the omission of a connecting mechanism would be a "fatal fault" in a cash register. It is proper for the witness to describe the results of the omission of the connecting mechanism, but his opinion that it is a "fatal fault" goes beyond the province of an expert.

4. SAME.

It is proper for an expert, after describing to the jury the details of the two machines in question, to state that a certain part of defendant's machine was the equivalent of, or "exactly the nature of," a certain part of plaintiff's machine.

5. SAME—ADMISSIBILITY OF EVIDENCE.

Where a corporation and its officers or directors are sued for infringement, and it is claimed by plaintiff that the corporations are mere devices to protect the individual defendants against the consequences of their infringement, it is proper to admit the testimony of one of the defendants as to his belief in the validity of a patent under which the defendants claim to make their machines. This evidence is admissible as tending to show that defendants are acting in good faith.

6. APPEAL—FORM OF EXCEPTIONS.

Under rule 24, par. 3 (31 C. C. A. clxv., 90 Fed. clxv.), of the circuit court of appeals for the First circuit, an excepting party must not only set out or indicate the specific ruling for which he contends, and the specific portion of the charge to which he excepts, but must also make proper references to the pages of the record containing the evidence on which the requests were based, or the evidence establishing that the charge objected to was erroneous. The court may, however, notice plain errors, though the exceptions fail to comply with the above requirement.

7. PATENTS—INFRINGEMENT BY CORPORATIONS—LIABILITY OF DIRECTORS.

A director of a corporation, who, by his vote or otherwise, has specifically commanded the subordinate agents of the corporation to engage in the manufacture and sale of an infringing article, is liable individually in an action at law for damages; and it is immaterial whether or not he knew that the article manufactured and sold did infringe a patent.

Brown, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Lysander Hill (Thomas H. Russell and Arthur H. Russell, on the brief), for plaintiff in error, National Cash-Register Co.

Robert F. Herrick and Samuel J. Elder (Frederick P. Fish, on the brief), for defendants in error.

Before PUTNAM, Circuit Judge, and BROWN and LOWELL, District Judges.

LOWELL, District Judge. These are four suits at law, brought by the National Cash-Register Company to recover damages for the infringement of a patent. The cases were tried together, and the jury found verdicts for the defendants. The plaintiff has excepted to some of the rulings made in the course of the trial and preliminary thereto. The plaintiff in error will hereafter be called the "plaintiff," and the defendants in error the "defendants." The plaintiff filed interrogatories to the defendants in the manner and form prescribed by Pub. St. Mass. c. 167. These interrogatories the defendants did not answer, and upon their failure to do so the plaintiff moved the court to default them, which motion the court denied, and ordered the interrogatories to be stricken from the files. The plaintiff thereupon duly excepted.

Section 861 of the Revised Statutes enacts that the "mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided." As the proceeding proposed by the plaintiff in his interrogatories filed in this action at common law is neither by oral testimony nor by examination of witnesses in open court, he seeks to procure its admission by bringing it within section 914 of the Revised Statutes. This provides that the "practice, pleadings, and form and modes of proceeding in civil causes, in the circuit courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit courts are held." In Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, the circuit court for the Southern district of New York had imprisoned for contempt a defendant who had refused to answer interrogatories propounded before trial by the plaintiff in the manner prescribed by Code Civ. Proc. N. Y. § 870 et seq. In the opinion rendered by the supreme court, Mr. Justice Miller pointed out that the case was one of evidence and procedure; that these matters were dealt with in two chapters of the Revised Statutes; and that, "if congress has legislated on this subject, and prescribed a definite rule for the government of its courts, it is to that extent exclusive of any legislation of the states in the same matter." 113 U. S. 721, 5 Sup. Ct. 727. He next stated that the Revised Statutes are intended to provide a system to govern the practice of the federal courts; that they provide a definite mode of proof in those courts, and specify the only admissible exceptions to that mode. "This mode is 'by oral testimony and examination of witnesses in open court, except as hereinafter

provided.'" 113 U. S. 723, 5 Sup. Ct. 728. The New York interrogatories, not being a mode of testimony by oral proof, must, to be admissible in the federal courts, fall within the specified exceptions dealt with in sections 863 to 870 of the Revised Statutes, which sections, as observed by Mr. Justice Miller, relate exclusively to depositions de bene esse, in perpetuam memoriam, or under a dedimus potestatem. The opinion goes on to point out that the New York interrogatories were not put under circumstances which made it admissible to take a deposition de bene esse, pursuant to the Revised Statutes, and that they did not observe the conditions under which a dedimus potestatem is granted "according to common usage," pursuant to section 866. "It is not according to common usage to call a party in advance of the trial at law, and subject him to all the skill of opposing counsel to extract something, which he may then use or not, as it suits his purpose. This is a very special usage, dependent wholly upon the New York statute." 113 U. S. 724, 5 Sup. 729. It was therefore held that the interrogatories fell neither within the rule of section 861 nor within the exceptions specified in the following sections, and the opinion concludes by repeating that: "Every action at law in a court of the United States must be governed by the rule or by the exceptions which the statute provides." The prisoner was discharged. The circumstances of the case at bar closely resemble those of Ex parte Fisk, and the reasoning of the court has an important bearing on the decision in this case. The Massachusetts interrogatories are sought as a "mode of proof in trials at law." The answers to them are not oral testimony, and therefore, to be admitted, must be brought within the exceptions specified in the Revised Statutes. They are not a deposition taken under the circumstances in which it is permitted to take a deposition by sections 863 to 865 of the Revised Statutes, and, like the New York examination, the Massachusetts interrogatories violate common usage by seeking to call the party in advance of the trial at law, and to "subject him to all the skill of opposing counsel to extract something which he may use then or not as it suits his purpose." As the Massachusetts interrogatories fall neither within the rule of section 861 nor within the exceptions allowed by the following sections, and as that rule and those exceptions provide an exclusive mode of proof in trials at law in the federal courts, it should seem that the interrogatories are inadmissible here. See, also, Railway Co. v. Botsford, 141 U. S. 250, 257, 11 Sup. Ct. 1,000.

It is further contended by the plaintiff that the interrogatories in question are admissible as a statutory substitute for a bill of discovery in aid of an action at law, and are thus brought within the provision of section 914 of the Revised Statutes. This view of the Massachusetts interrogatories was taken by the circuit court for this district in Bryant v. Leyland, 6 Fed. 125. We think the contention unsound. The supreme court has constantly maintained the distinction between the systems of law and equity, and has refused to adopt into the practice of the federal courts any part of the practice of the state courts which confounds the two systems. Moreover, the provisions of section 914 apply only to suits at law in the federal courts,

and, in the absence of express language, can hardly be intended to introduce into the practice and procedure of such suits statutory procedure which is in its nature plainly equitable. We find, therefore, that it has been decided by the supreme court that, if the statutory interrogatories are to be treated as laying the foundation for a deposition, they are inadmissible in federal practice, because a deposition is not authorized to be taken in such a case by the statutes of the United States; that an examination authorized by state statutes has been excluded on this ground when such examination, though not altogether similar, was yet in most respects similar to the interrogatories in the case at bar, the grounds for the exclusion, as stated by the supreme court, being largely applicable to the interrogatories in this case. We find, furthermore, that, if these interrogatories are to be treated, not as questions put to a deponent, but as a statutory substitute for a bill of discovery, they are excluded as an encroachment upon that control of equity procedure which belongs to the federal courts except when regulated in express terms by an act of congress. For these reasons we think that the interrogatories were forbidden by Revised Statutes, and not authorized by section 914 of the Revised Statutes, or any other federal law.

The plaintiff further contends that, even if the statutory interrogatories be treated as the taking of an ordinary deposition, and hence forbidden by section 861, yet they are permitted by chapter 14 of the Acts of 1892 (27 Stat. 7), which permits the taking of depositions in the mode prescribed by the laws of the state in which the courts are held. This position seems to us plainly untenable. The act of 1892, as stated by the learned judge in the circuit court, was intended only "to simplify the practice of taking depositions by providing that the mode of taking in instances authorized by the federal laws might conform to the mode prescribed by the laws of the state in which federal courts were held," and not "to authorize the taking of depositions in instances not heretofore authorized by the federal statutes, and to confer additional rights to obtain proofs by interrogatories addressed to the adverse party in actions at law." For these reasons the exception to the refusal of the judge of the circuit court to default the defendants must be overruled.

We now come to the plaintiff's exceptions taken in the course of the trial. Two of these relate to the exclusion of testimony. Mr. Dayton, an expert, and one of the plaintiff's witnesses, stated that the omission of a "connecting mechanism," so called, would be a "fatal fault" in a cash register. On objection by the defendant, the learned judge below held that the witness might describe the results of the omission of the connecting mechanism, but could not be permitted to call that omission a "fatal fault." As the word "fatal" contained an inference which went beyond the province of an expert, we think that the learned judge was right; and, moreover, under the circumstances, the ruling seems not to have been hurtful to the plaintiff's case. The same witness was not permitted to testify, on direct examination, that a certain part of one machine was the equivalent of, or "exactly the nature of," a certain part of

another machine. The witness had already explained to the jury the details both of the plaintiff's machine and of the alleged infringing machine, and from his explanation it might reasonably have been inferred that he thought the parts in question were the mechanical equivalents each of the other. The mechanism, however, was complicated, and an ordinary man, unskilled in mechanics, might well have failed to understand it completely. It was proper, therefore, that a witness skilled in mechanics, and understanding the meaning of the term "mechanical equivalent," should be allowed to express to the jury his opinion of the relation of one machine to the other, subject to further direct examination and to cross-examination, in order to bring out more clearly the grounds of his opinion. Curt. Pat. 489; Keyes v. Grant, 118 U. S. 25, 37, 6 Sup. Ct. 974; Bischoff v. Wethered, 9 Wall. 812, 814. This general proposition concerning expert testimony is, indeed, almost conceded, but defendants' counsel seems to contend that the evidence excluded would not have been helpful to the plaintiff. A direct statement of equivalence from a competent expert, however, might well have been helpful to an unskilled juryman unable to comprehend fully a statement of differences of detail. It is doubtful if the answer which was stricken out was exactly responsive to the question put to the witness, as that question appears on the record, and a want of responsiveness in the answer may have been the cause of the ruling of the learned judge. As a new trial is to be ordered for errors outside the one covered by this exception, our opinion just expressed is sufficient.

The fifth and sixth assignments of error relate to the admission of the testimony of William W. Drew, who is one of the defendants, concerning his belief in the validity of the Webster patent. As the plaintiff claimed that the corporations were mere devices to protect the individual defendants, evidence showing that the defendants were acting in good faith was admissible, and Drew's testimony objected to by the plaintiff was of this character.

The plaintiff's remaining exceptions relate to the judge's charge, and to his refusal to give rulings which the plaintiff requested. Before dealing with the substance of these exceptions, we think it proper to say something about their form, and about the form of that part of the plaintiff's brief which relates to them. Rule 10 of this court (31 C. C. A. cxlv., 90 Fed. cxlv.) requires the excepting party to state distinctly the several matters of law in a charge to which he excepts. Exceptions taken to long extracts from the charge are improper in form, and need seldom be considered by an appellate court on a writ of error. Holloway v. Dunham, 170 U. S. 615, 620, 18 Sup. Ct. 784. The exceptions to the refusal to give the rulings requested in the case at bar were taken in the general words, "except in so far as the same have been given." It is held that this form of taking exceptions is ordinarily fatal to their validity. Beaver v. Taylor, 93 U. S. 46; Walker v. Bank, 5 C. C. A. 421, 56 Fed. 76, 78. It is settled, however, that a plain error may be noticed by the appellate court, though the exceptions are irregularly taken. Wiborg v. U. S., 163 U. S. 632, 659, 16 Sup. Ct. 1127, 1197. Rule 11 of this

court (30 C. C. A. cxlvi., 90 Fed. cxlvi.) recognizes this principle in allowing the court, at its option, to notice a plain error not assigned. The record shows clearly that the question of the liability of the defendants for their acts done while they were officers of the infringing corporations, which is the principal question left for consideration, was understood by the court below and by both the parties to be fundamental. All knew what the question was. The attention of the learned judge had been called to it, and he had it most plainly in mind when refusing the plaintiff's requests, and when charging the jury. As to the form in which the exceptions to the refusal to give the rulings requested were taken, it may be sufficient to say, as was said in Hicks v. U. S., 150 U. S. 442, 453, 14 Sup. Ct. 144: "The learned judge below seems to have been satisfied with the shape in which the exceptions were presented to him, and we think they sufficiently raise the questions we have considered." Lucas v. U. S., 163 U. S. 612, 618, 16 Sup. Ct. 1168. It is clear that the formal statement in the bill that the exceptions were allowed controls the informal conversation set out in the record to which the defendants have called our attention.

We come next to the brief. Paragraph 3 of rule 24 (31 C. C. A. clxv., 90 Fed. clxv.) requires the brief to contain a clear statement of the points of law or fact to be discussed, with a reference to the pages of the record relied upon in support of each point. Under this rule the excepting party must not only set out or indicate the specific ruling for which he contends, and the specific portion of the charge to which he excepts, but he must also make proper references to the pages of the record containing the evidence upon which the requests were based, or the evidence which establishes that the charge objected to was erroneous. This has not been done. For example, the plaintiff's brief fails to point out specifically the particular clauses, sentences, or paragraphs of the long extract from the charge, printed in the brief, which he contends are erroneous, and it makes no reference to the pages of the record which contain the evidence relating to the parts of the charge objected to. The court has done its best, under the circumstances, to marshal the evidence bearing upon the various exceptions, but, if any matter has been overlooked, the responsibility for the omission does not rest upon us. In a case which contains 51 assignments of error and more than 70 requests for instructions, the need of orderliness is especially great.

In conclusion, though we have felt it right, by way of guiding future practice, to comment upon the form of the exceptions and the brief, we think that, upon the record as it stands, we can dispose of the principal question which the parties intended to raise. That question concerns the liability of the directors and other officers of a corporation for infringements committed by the corporation under their direction. The general principles determining this liability are in no wise peculiar to the patent law, but are equally applicable to all torts. As a general principle, no man can justify the commission of a tort by showing that he was employed by some one else, or that he committed the tort as the agent or in the interest of another. Mitchell v. Harmony, 13 How. 115, 137; Pol.

Torts (5th Ed.) 190. Thus generally stated, the proposition would hardly be controverted by the defendants; but the physical act which constitutes infringement—the manufacture, sale, or use of the infringing article—is commonly not the physical act of the director or superintendent or manager of a corporation, but the act of some subordinate who is the agent or servant, not of the director, but of the corporation. To this subordinate the director or other superior officer of the corporation has given orders, and in giving them has professed to speak, not as an individual, but as the corporation's mouthpiece, and in the corporation's name. These directions and orders, given by the director in the corporation's behalf, it is urged, do not render the director liable for the infringement, which is to be treated as the tort of the corporation alone. It is true that the liability of the corporation for infringement and other torts physically committed by its subordinate agents and the liability of the corporation's director for these torts are not necessarily the same. This is well pointed out by Lord Chief Justice Cockburn in Weir v. Bell, 3 Exch. Div. 238, 247, a case in which it was sought to hold the directors of a company liable for false representations contained in a prospectus issued by its manager:

"The defendants, in what they did, were acting as the agents of the company, and not as principals, and therefore they would not be liable, generally speaking, for misrepresentations made without their authority by persons employed by them on behalf of the company, and who, in such employment, were acting, not as their agents, but as the agents of the company."

Again, in Brown v. Lent, 20 Vt. 529, which was a suit brought against an agent for the negligence of his subordinate, it was said:

"In torts a party may be responsible civiliter by reason of participation in an act occasioning the injury, either by direct personal interference or by giving directions, or commands, or permission, which will make the act, though done by others, his own; or he may be liable constructively by reason of his particular relation and connection with the agent who commits the injury."

That is to say, one who does not actually and physically commit the tortious act may yet be liable if he directs or commands its commission, or if he sustains to the person actually committing it the relation of master or principal; but when the tort is not committed by his direction or command, nor committed by one who stood to him in the relation of agent or servant, he is not liable, though the tort was committed by the subordinate agent of his own principal, over which subordinate he had authority as an agent of higher rank. Bath v. Caton, 37 Mich. 199; Paper Co. v. Dean, 123 Mass. 267. The corporation may be liable, not only for the tort of its agent, committed in obedience to its orders, but also for a tort committed without orders, or even in direct disobedience to orders, if that tort is committed by the corporation's agent in the course of his employment. The director, on the other hand, is ordinarily liable only for those torts which he himself commits, or the commission of which he specifically commands. Where, however, the director, manager, or other agent of a corporation, though in the name of the corporation, himself commands the commission of a tort by the subordinate agent of the corporation, the former is individually liable. Thus, in Wilson v. Peto, 6 Moore, 47, the defend-

ant, who, as the superintendent or foreman of a contractor, had charge of the erection of buildings which obscured the plaintiff's ancient lights, was held liable, as the work was carried on under his sole superintendence and management. So, in Power Co. v. Allen, 120 Mass. 352, the water commissioners of Boston were held personally liable for the diversion of water by their subordinates under their directions. See, also, Peck v. Cooper, 112 Ill. 192.

It is urged that, while a manager, or superintendent, or other like officer of a corporation may be liable for acts of infringement committed by the subordinate agents of the corporation in obedience to his orders, yet that a director who, by his vote in the board of directors, orders the commission of such acts, is not made liable for the acts committed in pursuance of the order which he has voted to pass. To hold a director liable in such case, it is said, is not merely to strip him of the defense that his act was done as the agent of another, but to impose upon him liability for an order which was not his order at all, but that of a board of which he was a member. This contention, plausible as it may seem at first sight, we deem unsound. We have said that the agent of a corporation who individually and personally commands a subordinate agent of that corporation to commit an act of infringement (omitting from consideration cases in which the agent merely transmits an order given him by another) becomes liable therefor, although the order so given is expressed to be, and is in fact, the order of the corporation. If this be so, it can hardly be contended that, when two or more agents join in giving such commands, they do not each become personally liable. To enable one of such agents—a director, for example—to escape liability by setting up that the order which he had joined in giving was neither his several nor his joint order, but was the command only of a fictitious person or entity of which he was a component part, would permit, in effect, what we have held to be unlawful,—that a man should justify the commission of a tort by showing that he committed it, not in his personal capacity, but in some other. Thus, in Weir v. Barnett, 3 Exch. Div. 32 (on appeal, sub nom. Same v. Bell, Id. 238), above referred to, it was assumed throughout that the defendant directors would have been liable if they had specifically directed the publication of the false prospectus complained of in the declaration. Those of them who obtained a verdict obtained it only because it was shown that the false statements were made without their direction, authority, or knowledge. The fact that the directions which they gave were given by them in their capacity as directors was not even suggested as a valid defense. Thus Lord Justice Bramwell said (page 243):

"The defendant, then, is not actually guilty of this fraud. He did not commit it himself, nor procure its commission knowingly. Had he done so, he would have been liable, whether as director, manager, printer of the prospectus, or entire stranger to the company, and acting merely from mischievous love of roguery."

See, also, Amy v. Supervisors, 11 Wall. 136.

In Ferguson v. Earl of Kinnoull, 9 Clark & F. 251, a suit was brought against the members of a presbytery for rejecting a nomi-

nee as presentee to a church. The case contains much that has no bearing upon this discussion, but, among other defenses, the appellants set up "that the conclusions of the libel are directed against the defenders solely as individuals in consideration of acts alleged to have been done by the presbytery of Auchterarder in its official and corporate capacity," and much more to a similar effect. The house of lords overruled this defense. Lord Lyndhurst said:

"But then, my lords, it is said that the action cannot be supported against these parties, as the act complained of was the act of the body. How can you bring an action, it is said, against them individually? My lords, it was these individuals who did the wrong. If all of them refused to take Mr. Young upon trial, and they, by their vote, prevented his being taken upon trial by the others, they are the parties, therefore, that did the injury, and consequently they are subject to an action. Suppose it had been a unanimous vote, —that all had concurred in it,—the party sustaining the injury might, if he had thought proper, have brought action against all of them or against any one, because it is laid down as a general principle that torts are joint and several. It would not have been necessary for him to bring an action against all if all had concurred, but he might have brought his action against one or more of them, as he might think proper. Here he has brought his action against those who did the wrong, and they are clearly liable to make compensation and to give redress. My lords, it was suggested at the bar, in the course of argument, that it is possible, as this was put to the vote, that some of these parties might have voted on the other side. Had that been the case, that circumstance, so far as such individuals are concerned, would have been a ground of defense; but that does not appear upon the record. It is not stated; it is not suggested. On the contrary, from the shape of the record, the conclusion is directly the other way." Id. 282.

See, also, the remarks of Lord Brougham at page 289.

We refer to this case, not upon any supposed analogy between the Church of Scotland, or one of its presbyteries, and a manufacturing corporation, nor because the quasi judicial duties of members of a presbytery are deemed similar to the duties of directors, but only to show that members of a body who have voted to commit an actionable wrong cannot shield themselves by a plea that the wrong done was not the act of them as individuals, but merely of the body of which they were members.

It is not necessary to refer here to the cases decided in the circuit courts concerning the liability of the officers of a corporation for acts of infringement directed by them in their official capacity. Most of the decisions rendered are doubtless correct, but the language of the opinions is sometimes irreconcilable, and often goes further than was required by the facts under consideration. For us it is sufficient to say that a director's liability to an injunction does not conclusively establish his liability in an action at law for damages, and, conversely, that his liability in an action at law does not conclusively establish that he may properly be enjoined, or ordered to account for profits. In Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, we find nothing contrary to the opinion just expressed. It is said at page 18, 161 U. S. and page 445, 16 Sup. Ct., that the officers and agents of the United States, "though acting under order of the United States, are personally liable to be sued for their infringement of the patent," and a plea that the defendants only operated and used the infringing article as officers, servants, and em-

ployés of the United States was overruled. 161 U. S. 23, 16 Sup. Ct. 447. An injunction against the use of the infringing article was denied because that article was the property of the United States, which could not hold or use it except through their officers or agents, and were, therefore, "an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought." As the United States at the same time were a necessary party to the suit, and yet, as sovereign, could not be made an involuntary party thereto, it followed that the injunction could not be granted without violating the principles affirmed in a long series of decisions of the supreme court. A decree awarding profits or damages was also refused because "the only gain, profits, and advantages upon which the report of the master and the decree of the court were based were those which had accrued to the United States," "and the master found that no damages in addition to such gain, profits, and advantages had been proved." We are of opinion, therefore, that by the general principles of law, and by analogy with other torts, a director of a corporation, who, as director, by vote or otherwise, specifically commands the subordinate agents of the corporation to engage in the manufacture and sale of an infringing article, is liable individually in an action at law for damages brought by the owner of the patent so infringed. As with other infringers, it is immaterial whether the director knew or was ignorant that the article manufactured and sold did infringe a patent.

It remains to apply this rule to the facts of the case. The plaintiff was the owner of a patent for a cash register. At the trial it introduced evidence to show that the Boston Cash Indicator & Recorder Company was a corporation organized in 1886 to manufacture cash registers of a particular pattern, which manufacture, for the purposes of this opinion, must be taken to have infringed the plaintiff's patent; that between September 3, 1886, and September 3, 1891, the corporation, with part of the defendants as its officers, manufactured and sold a considerable number of these infringing cash registers; that the Boston Cash-Register Company was organized in 1890 "for the purpose of purchasing the assets of the Boston Cash Indicator & Recorder Company, and continuing its business aforesaid," and, as no business of the Boston Cash Indicator & Recorder Company is mentioned in the record except the manufacture and sale of registers of the aforesaid infringing pattern, it appears sufficiently for our purposes that the "business aforesaid" was, at least in part, an infringing sale and manufacture; that on April 5, 1891, the Boston Cash-Register Company purchased the assets, and that it made and sold machines containing the infringing mechanism. Of the four suits before us, No. 227 was brought to recover for acts of infringement alleged to have been committed between September 3, 1886, and September 3, 1891; No. 225 for alleged acts of infringement between April 30, 1890, and April 15, 1891; No. 226 for alleged acts of infringement between April 15, 1891, and April 30, 1892; No. 224 for alleged acts of infringement between April 30, 1892, and September 14, 1895. The defendants in all four suits were not the same, but some persons were defendants in two or more

of them. All the defendants were, at the several times in question, directors either in the Boston Cash Indicator & Recorder Company or in the Boston Cash-Register Company. Further evidence was introduced tending to show (so we construe the somewhat vague phrases of the bill of exceptions) that part of the defendants organized the Boston Cash-Register Company for the purpose stated, and that part of the defendants, as boards of directors of the Boston Cash Indicator & Recorder Company, and others of the defendants as boards of directors of the Boston Cash-Register Company, controlled and directed all the business operations of the companies, respectively, and that part of the defendants, as boards of directors of the Boston Cash-Register Company, appointed one Chauncey H. Pierce, of Northampton, Mass., its general manager and managing director, giving him authority and power to conduct its business of manufacturing and selling registers in its behalf; and that from time to time reports were received by part of the defendants as directors at directors' meetings, and circulars were exhibited to them, and instructions by them given to continue the business of the last-named corporation, and to put the infringing machines upon the market, and to push their sale. Taking the whole record together, we think it sufficiently appears that there was evidence that some of these directions and instructions of the defendant directors were specifically concerned with registers of the infringing pattern. The record does not make it plain if these directions and instructions were limited to formal votes given by the defendants as members of the board of directors. It rather seems that they were not so limited, for, if they had been, it could hardly have happened, as stated in the bill of exceptions, that "there was a controversy whether they [the defendants] were acting as individuals or as directors." By reason of such acts of the defendants, or some of them, done while they were directors of one or the other above-named corporations, the plaintiff seeks to hold some of the defendants personally liable for infringement in each suit; and we are led to infer that the same question was raised in each of the four cases, and that evidence enough to raise it was offered in each, although the bill of exceptions is far from being clear about this.

We come now to the specific errors in the judge's charge, assigned by the plaintiff. The first six have been already dealt with. The twentieth assignment concerns the effect of the decision of the supreme court in National Cash-Register Co. v. Boston Cash Indicator & Recorder Co., 156 U. S. 502, 15 Sup. Ct. 434. Regarding this the learned judge charged the jury that this decision had no materiality in this proceeding, unless the jury should find that the defendants sustained an individual or personal relation to that case, and, by reason of individual and personal acts of adoption and control, became, in effect, parties thereto. He submitted, therefore, to the jury, this question: "Did these defendants, in their individual capacity, not officially, as a matter of fact, adopt and carry on the defense in that proceeding?" Regarding certain advances of money made by the defendants to the Boston Cash Indicator & Recorder Company for the purpose of carrying on the suit above mentioned,

he charged the jury that, if the "funds so obtained by the corporation were expended under the direction and control of the officers in charge of the interests of the corporation in respect to such litigation, then they [the defendants] would not be bound by it." As there was no evidence that any individual defendant was, in the sense of the law, in privity with the litigation in the supreme court, these instructions, which are the substance of the long extract from the charge, set out in the assignment, were plainly correct, and properly protected the defendants' right.

The twenty-third assignment sets out a portion of the judge's charge substantially as follows:

"Invention may be of two kinds: First. What is known as 'primary invention.' That means inventions of entirely new principles or new ideas,—principles and ideas which have not been used or been known. The other class is known as 'secondary inventions,' and are such as involve a combination of previously known principles or functions in such a way as to accomplish different or better results. It is not claimed for the Ritty and Birch device that it belongs to the first class,—that is to say, that it involves primary invention; but the claim is that it describes a new combination, and is therefore of the class known as 'secondary inventions.' "

This is a correct statement of the law, and applicable to the patent in suit. If the plaintiff wished to object to the use by the learned judge of the word "claimed," he should have excepted specifically to the judge's remark concerning the claim made; but this he has not done.

The requests asked for by the plaintiff and refused by the judge, which are set forth in the twenty-fourth and twenty-fifth assignments, were properly refused, because the words "assented to," contained in them, are too vague. We are not prepared to say without qualification that every director or officer who assents to an infringement is personally liable therefor.

The requests contained in the twenty-sixth and twenty-seventh assignments were sufficiently covered by the charge.

The twenty-eighth assignment concerns the refusal of the learned judge to give the following request:

"If the jury believe from the evidence that any of the defendants personally caused or aided in causing a corporation to be created, organized, or promoted for the purpose of manufacturing or selling machines that are an infringement of the first claim of the plaintiff's patent in suit, and that such defendants became officers or directors of such corporation, and that said corporation, while said defendants were officers or directors as aforesaid, proceeded to manufacture or sell said infringing machines, then the jury are instructed that said defendants who participated in the creation, organization, or promotion of said corporation, and in the control of its operations during the period while it was infringing as aforesaid, are themselves infringers of said first claim of the plaintiff's patent, and are personally liable to the plaintiff for their said infringement."

The principles of law underlying this request we have already sufficiently discussed, and, as there must be a new trial in any event, we need not now determine whether the request does or does not fit the record, and conform to law in every detail.

The plaintiff's requests for a ruling regarding the defendants William W. and Oscar Drew, set out in the thirty-first assignment, are

disposed of by the fact that upon the whole record it is clear that the plaintiff never sought in these suits to proceed for any infringements except those with which the defendants were connected through their relation to the infringing corporations. The request was therefore properly refused.

The thirty-second assignment concerns the refusal of the learned judge to give the following instruction, requested by the plaintiff:

"If the jury believe from the evidence that the Boston Cash Indicator & Recorder Company or the Boston Cash-Register Company infringed the plaintiff's patent by the direction or procurement of the defendants, or any of them, they then acting as directors of said infringing company, they are instructed that such acts of infringement were illegal, and were not within the scope of the lawful authority of such defendants as directors of such company to order or direct. The law gives directors of a corporation authority to perform only lawful acts; and when, under cover of their official position, they proceed to perform, or direct the company to perform, unlawful acts, they are therein acting outside their lawful authority, and, thereby rendering themselves liable personally for any damages which may result therefrom. Even the government itself cannot authorize its agents to do unlawful acts, much less a mere corporation created under the authority of the government."

The last sentence of the instruction requested is irrelevant and immaterial, and there are in the rest of it several errors of form. Considering, however, what has already been said, we think that the request was sufficiently explicit to require the judge to charge the jury that a defendant who directed that infringing machines should be manufactured and put upon the market, and that their sale should be pushed, was not relieved from liability by reason of the fact that he was acting as director of a corporation, or in its behalf. The instruction requested was not given, but, on the contrary, the jury was instructed that the defendants were not liable unless they acted in their individual capacity in the specific acts of infringement, or gave directions outside of their ordinary and usual duties as directors or stockholders. In refusing the instruction requested, and in instructing the jury as he did, the learned judge was doubtless following Nickel Co. v. Worthington, 13 Fed. 392, decided in the circuit court for the district of Massachusetts. The opinion in that case does not, as we have shown, state the law correctly.

The requests contained in the thirty-third, thirty-fourth, and thirty-sixth assignments, regarding the loan of money by the defendants to the infringing corporations, do not state a correct rule of law, and as to some of them there is no evidence in the record making them relevant to the case at bar.

The request contained in the thirty-fifth assignment does not state the law correctly, for the reasons above given, inasmuch as one of its alternatives would hold the directors of a corporation individually liable for all the torts of the subordinate agents of the same corporation.

Regarding the thirty-seventh assignment, there is no evidence in the record applicable to the request contained in it.

The thirty-eighth assignment covers a long extract from the charge under such circumstances that it is impossible to say what questions it intends to raise.

.he thirty-ninth assignment is concerned with the following paragraph of the judge's charge:

"Affirmative general directions as directors, or agents, or superintendents as to the general management, and scope, and conduct of the general business of the corporation would not render the directors, or stockholders, or agents, or superintendents liable. This would not be enough to charge them, provided you should find the corporataion to have been organized in good faith, and for a supposed bona fide and lawful purpose. If you should find this, they would not be liable unless they acted affirmatively in their individual capacity in the specific acts of infringement, or gave directions outside of their ordinary and usual duties as directors or stockholders; and in that event they would be liable."

This paragraph, as a whole, does not leave upon the mind a correct impression of the law, though we have here no occasion to deny the general proposition contained in its .first sentence. The questions of good faith and lawful purpose do not enter into this case, except so far as an issue is made that at least one of the infringing corporations was purposely organized as a sham, and as a cover for what in fact was merely the interest of individuals. And, for the reasons we have already given, the last sentence is also misleading, because, if any one of the defendants directed specifically the manufacture and sale of the infringing device, the law considers it immaterial whether, in that particular, he acted in his individual capacity or otherwise, and whether his directions were given while he was acting within or outside of his ordinary and usual duties as a director. So long as he was active within the limits which this opinion has pointed out, he could not properly raise the question which the last sentence in the paragraph recited permitted him to raise.

The fortieth assignment is concerned with the following paragraph of the charge:

"It becomes, or at least it may become, necessary for you to determine whether this corporate existence was founded in good faith or bad faith; whether it was created for the purpose of imposition, and for the purpose of avoiding the consequences of such imposition, or whether it was a supposed legitimate corporate business enterprise. If it was an imposition, a general scheme to avoid liability, as I have said, they would all be liable for the consequences of the infringement, if there were any, whether they actually or actively participated or not. This would be upon the ground that the defendants associated themselves together for the general purpose of promoting an unlawful business scheme, such general purpose rendering them liable for the acts of agents and officers acting within the scope of such general purpose or scheme. On the other hand, although the right or supposed invention upon which their enterprise was founded proved to be no invention, and therefore one not entitled to protection, they would not be liable while acting within the line and scope of their duty as agents and officers."

We are not called upon to determine if all the above statements are true without qualification. It appears that "one theory of the plaintiff's case was that the Boston Cash Indicator & Recorder Company and the Boston Cash Register Company were sham corporations, formed by the defendants" as a shield for their operations "in stealing the plaintiff's business and infringing its patents"; "and a further theory was that, even if these were regularly chartered companies, legitimately doing business, the directors were personally responsible for directing the company to commit a tort," and for

participating in it as directors. A part of the paragraph set out in the assignment refers to the first theory, and is favorable to the plaintiff. A part may refer to the second theory, though this is not altogether clear. As the exeception was taken to the paragraph as a whole, it was not sufficiently specific, and cannot be sustained.

The remaining assignments of error were not urged in argument.

The following judgment is entered in each of these cases: The judgment of the circuit court is reversed, the verdict set aside, and the case remitted to that court for further proceedings in accordance with law; the plaintiff in error to recover of the defendants in error its costs in this court.

BROWN, District Judge, agrees with so much of the opinion as relates to interrogatories, but does not concur with the views of a majority of the court as to the liability of directors, nor in the conclusion.