**TELLING et al. v. BELLOWS–CLAUDE NEON CO. et al.**

No. 6845.

Circuit Court of Appeals, Sixth Circuit.

May 7, 1935.

A. G. Newcomb and W. K. Sullivan, both of Cleveland, Ohio (Newcomb, Newcomb & Nord, of Cleveland, Ohio, on the brief), for appellants.

William Bohleber, of New York City (Harry J. Crawford, of Cleveland, Ohio, and Francis H. Fassett and Bohleber & Ledbetter, all of New York City, and Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a decree imposing penalties and costs upon the appellants as officers and directors in control of a corporation for civil contempt in the violation of an injunction restraining patent infringement. The patent was held valid and infringed by this court in Sun Ray Gas Corporation v. Bellows-Claude Neon Co., 49 F.(2d) 886. Pursuant to our mandate, decree was entered in the District Court for injunction and accounting against the Sun Ray Gas Corporation and certain of its officers, not including the present appellants. Upon the date the injunction issued, the assets of the enjoined company were transferred to the Sun Ray Products, Inc., which assumed its predecessor's liabilities. Infringement continuing, contempt proceedings were instituted against the new corporation, resulting in decree for damages. Subsequently the present appellants were brought into the case by supplemental bill, and, from a decree adjudging them guilty of contempt and imposing penalties, the appeal is taken.

We accept the soundness of the premise asserted by appellants and adopted by master and court below, that, before civil contempt may be adjudged and penalties therefor imposed, contemptuous acts must be established by evidence that is clear and convincing. We adhere also to the rule announced by this court in D'Arcy Spring Co. v. Marshall Ventilated Mattress Co. (C. C. A.) 259 F. 236, 242, that an officer of a corporation is not liable for damages and profits on infringement unless he inflicted the wrong otherwise than through the usual relations between officer and corporation, or as in Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 230 F. 120, 140 (C. C. A. 6), that infringement by officers must be as individuals before they can be held liable. See, also, Dangler v. Imperial Machine Co., 11 F.(2d) 945 (C. C. A. 7).

This does not, however, compel a holding to the effect that where all doubt as to validity and infringement has been settled, and an injunction has issued, directed not only to the infringing corporation but to all of its officers and agents, of which the accused officers have knowledge, that the corporate form furnishes immunity when the infringement that continues is the identical infringement adjudicated and commanded to be discontinued. The principles to be applied in determining individual liability for corporate infringement in the first instance, and those applicable to a determination of such liability for corporate defiance of a specific injunctional order, are not necessarily the same. Injunction having been decreed, the uncertainty noted in the Dangler Case which surrounds the question of validity and infringement, and which would make any rule other than that there applied unduly harsh and oppressive, no longer exists. The mandate of the court, directed to the corporation and its officers, imperatively compels obedience. The precise basis for distinction may be difficult to apprehend, and adjudicated cases give us little help. Principles of equity and justice, and the need for preserving the plenary power of the court to enforce its decrees, must guide us where clearly applicable precedents are wanting.

The Sun Ray Gas Corporation was in the business of manufacturing, selling, leasing, and servicing luminous signs. Its signs were in the main equipped with electrodes held by us to infringe Claude patent, No. 1,125,476, for a "system of illuminating by luminescent tubes." Injunction issued September 30, 1929, of broad scope, restraining not only manufacture and sale of infringing signs, but their leasing and servicing. After the service of the injunctional order no infringing signs were manufactured or sold, either by Sun Ray Gas Corporation or its successor, Sun Ray Products, Inc. It is, however, clearly established by the evidence that many infringing signs continued under lease and were serviced by the latter corporation. The defense is that Telling and Curtis, having caused to be issued to their subordinates written orders that all infringing electrodes be replaced by noninfringing electrodes, and being told and in good faith believing that this was done, are not guilty of contempt.

Telling, Curtis, and Woolrich were the controlling stockholders and directors of Sun Ray Products, Inc. Curtis was also for a time its president. Woolrich made no con-

test and has not appealed. We are concerned, therefore, with the decree only as it applies to Telling and Curtis. Notwithstanding the written orders to subordinates to replace infringing electrodes, infringing signs continued in use and were serviced. The master found that Woolrich had falsified the records, making it appear that all signs had been changed over from the infringing type. Meanwhile, Telling had been loaning large sums of money to the corporation, and had taken as security liens on the company's signs leased to customers. On October 22, 1929, arrangements were made at a board of directors' meeting, Telling and Curtis participating, for a large loan to be made by Telling to the company, to be used partly to defray the expense of changing infringing electrodes. The master found from this that appellants knew at that time that infringing electrodes were in use between September 30, 1929, and the date of the directors' meeting. In March of 1930, Telling instructed T. J. Keller to check up and report to him on the number of signs that were still infringing, and upon receipt of Keller's report gave instructions to replace the infringing electrodes, whereupon a twenty-four hour a day shift was employed, which continued for three weeks at a weekly pay roll of $5,000 per week. Nevertheless, as late as February, 1931, many signs were found in Cleveland and other cities still equipped with the infringing device. In December, 1930, Telling and Curtis resigned as directors. On January 28, 1931, Telling took judgment on his notes, had a receiver appointed, who advertised and sold the mortgaged signs, which Telling bid in and later sold. Of these, forty were identified as equipped at least in part with infringing electrodes. In addition, Telling had upon his residence an infringing sign, claimed to be used for the purpose of advertising the corporation's business. It is urged and not disputed that neither Telling nor Curtis were practical men in the organization; that they did not themselves install or service signs; that it would have been impossible for them to inspect all signs being serviced, and doubtful whether even upon inspection they could have determined whether or not the infringing device had been replaced.

■■■ These circumstances, sufficiently recited, bring us to a consideration of the problem of appellants' liability. That the injunctional order was disobeyed by the corporation, and that it is liable, is not in dispute. That the decree was directed not only to the corporation, but to its officers and agents, and that Telling and Curtis knew its terms, is also not in controversy. It is urged, however, that lack of knowledge on the part of Telling and Curtis that their orders had been disobeyed and their records falsified, and the failure of the evidence to show any willful or contumacious acts upon their part in defiance of the injunction, absolves them from liability. We do not understand, however, that in cases of corporate infringement knowledge of the director or officer charged with infringing that the article manufactured or sold (or leased or serviced) did infringe, is material. Claude Neon Lights, Inc. v. American Neon Light Corp., 39 F.(2d) 548 (C. C. A. 2); D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., supra; Crown Cork & Seal Co. v. Brooklyn Bottle Stopper Co., 172 F. 225 (C. C. N.. Y.); National Cash Register Co. v. Leland, 94 F. 502 (C. C. A. 1). Nor is either willfulness or contumaciousness an essential element in civil contempt, however indispensable it may be to a finding of criminal contempt. Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., supra (C. C. A.) 230 F. 120, 131 to 134.

■■■ Inquiry suggests itself as to the duty of the controlling directors or officers of a corporation when a mandatory injunction of which they have knowledge issues, directing them to refrain from infringement. The corporation being an abstraction can act only through its officers or agents. Clearly something must be done about it, and certainly in a case where, as here, infringement will automatically continue unless affirmative action is taken to stop it. We may concede without deciding that where an injunctional order requires something to be done forthwith, which it is humanly impossible to do instantaneously, reasonable interpretation must be given to the court's command, and that compliance therewith within such time as under all of the circumstances would appear to be reasonable may be substantial compliance with the order. It may also be conceded, again without deciding, that where the injunction is addressed to directors not active in the mechanical activities of their business, and obedience to which requires mechanical activity, that the order is substantially complied with when the officers or directors take such steps as are under all of the circumstances reasonably appropriate to se-

cure prompt obedience to the court order. Granting also that the written instructions issued by the corporation to its service department to replace infringing electrodes were reasonably calculated to secure obedience to the injunction, and certainly steps in compliance with a court order cannot be interpreted as in defiance thereof, nevertheless, when it was brought home to Telling and Curtis on October 22, 1929, that infringement was still continuing, and to Telling again in March of 1930 that many infringing electrodes had not yet been replaced and neither did anything further than to repeat instructions previously given and disregarded, then we think it cannot be said in any view of the case that the steps taken to insure compliance with the injunctional order were reasonably appropriate to that end. Just what should have been done we do not feel obliged to indicate, though the appellees suggest that it would have been a simple matter to have turned off the offending signs. We are, however, constrained to hold that in the light of all circumstances there was clear and convincing evidence to sustain the findings and conclusions of the master that the appellants were guilty of contempt.

We are not unaware that there are holdings, such as in Weston Electrical Instrument Co. v. Empire Electrical Instrument Co., 166 F. 867 (C. C. N. Y.), affirmed 177 F. 1006 (C. C. A. 2), which lend support to the contention that it is misfeasance and not mere nonfeasance that imposes upon officers of a corporation liability for its torts. Defiance of a mandatory injunction, however, transcends in importance and sinister consequence the commission of a mere tort, and the court in the above case was concerned with a question of accounting for damages after injunction rather than with a contempt proceeding. The same is true in Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., 296 F. 201 (D. C. N. Y.); New Departure Mfg. Co. v. Rockwell-Drake Corp., 287 F. 328 (C. C. A. 2). We are not unmindful also that the rule we here apply may in instances prove harsh in placing officers of a corporation endeavoring in good faith to comply with court decree at the mercy of dishonest employees who violate instructions. Safety, however, lies in diligence, and the court is primarily concerned with preserving for the owner his adjudicated patent monopoly and for the courts a proper respect for their decrees.

In conclusion it must be added to what we have said of the duty of officers and directors to insure compliance with the orders of the court, that Telling, in loaning money upon the security of infringing devices, foreclosing his liens thereon, buying in and selling the pledged property, and in the maintaining at his own residence an infringing sign, acted solely in his individual capacity, and not as an officer and director of the corporation, and in these acts was guilty of contempt without regard to other considerations herein discussed, and as to such acts it is immaterial whether he knew or was ignorant that the property involved infringed the patent. National Cash-Register Co. v. Leland, supra (C. C. A.) 94 F. 502, at page 511.

The decree below is affirmed.