STEBER MACH. CO. v. RANDOM KNITTING CO. et al.

(District Court, N. D. New York. November 12, 1914.)

1. PATENTS (§ 287*)—INFRINGEMENT BY CORPORATION—LIABILITY OF OFFICERS.

The fact alone that defendants are directors of a corporation is not sufficient to charge them with personal liability for infringement of a patent by the corporation, but an officer who was the procuring cause of the infringement is liable with the corporation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 457–459; Dec. Dig. § 287.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—KNITTED FABRIC.

The Steber patent, No. 865,279, for a knitted fabric having a fleece side, discloses invention and is valid, and its claims are broad enough to cover a fabric having loops, comparatively few in number, on its face side in addition to those on the back required for forming the fleece. Claims 3, 5, and 7 held infringed.

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—KNITTING MACHINE.

The Steber patent, No. 810,578, for a knitting machine designed to produce a certain fabric, discloses invention and is valid, and is not limited to the machine of the latch needle type described and shown in the specification and drawings, but is infringed by a machine of the spring needle type, in which equivalent parts are so arranged as to co-operate on the same principle to produce the same result. Claim 8 held infringed.

In Equity. Suit by the Steber Machine Company against the Random Knitting Company, George W. Cummings, Frank J. Gardner, and William E. Proctor. On final hearing. Decree for complainant against the Random Knitting Company and Cummings only.

Suit in equity to restrain alleged infringement of United States letters patent No. 865,279, dated September 3, 1907, for knitted fabric, issued to Bernard T. Steber, assignor to the Steber Machine Company, and to restrain alleged infringement of United States letters patent No. 810,578, issued January 23, 1906, to said Steber for knitting machine, and also for an accounting.

Richard R. Martin, of Utica, N. Y., for complainant.
Frederick W. Cameron, of Albany, N. Y., for defendants.

RAY, District Judge. The knitting machine patent has no necessary connection with the knitted fabric patent, although the machine was made with special reference to the manufacture or knitting of the knitted fabric. No question is raised of multifariousness or improper joinder, and the evidence has been taken and final hearing had; both parties being content and desirous of having the two patents considered at the same time as well as the question of infringement.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The Random Knitting Company is a corporation and defendants Cummings, Gardner, and Proctor are officers thereof. Gardner and Proctor are directors simply in the corporation, but are not shown to have had anything to do with the alleged infringement, unless it be that they are personally liable because of the fact that they are directors in the corporation. I do not understand that this is sufficient to charge them with infringement. As to the defendant Cummings, he was the procuring cause of the infringement, if there be infringement of a valid patent, and acted with full knowledge.

[2] The knitted fabric patent relates to that class of ribbed knitted fabrics which have wales on one side and meshes on the opposite side, and with which is combined a yarn having projected loops which can be submitted to a brushing or jigging action, so as to produce a fleecy surface upon one side of the fabric. The base fabric is formed of an alternating series of longitudinal wales, knit each from a different yarn, or from the same yarn at different times, if so desired. The stitches forming the wales are all drawn toward the outside of the fabric. The loops forming each wale each include a portion of the other yarn connecting the two neighboring loops at the back of the fabric. The connecting portions of the loops form four-sided meshes on the back of the fabric, which thus exhibits on one face parallel longitudinal wales alternately of different yarns, and on the other side lozenge-shaped meshes or reticulations formed by the connecting legs of the loops.

As to the object of the invention the patentee says:

"The object of my invention is to produce a fabric having superior wearing qualities, a considerable amount of elasticity, and a ribbed face side, resembling very nearly the 'Strutt' rib, in conjunction with a fleece side. I attain this object by knitting a fabric from a plurality of threads, the fabric being of double thickness, each thread or series of threads forming independent wales alternately arranged, the connecting threads of each set of wales being interknitted with the intervening wales, the wales forming the ribs of one side of the cloth, and the connecting threads forming meshes on the opposite side, the fleecing thread being laid between the wales and meshes."

The patentee says:

"I have produced this fabric in several ways, but would call especial attention to my knitting machine patent 810,578, issued January 23, 1906, which describes and shows an ideal method of producing such a fabric, and that it may be knitted from one or more pairs of threads."

While all the claims are in issue, the complainant relies specially on claims 3, 5, and 7, which read as follows:

"3. A knit fabric comprising two alternating series of wales of knit loops, the connecting thread of adjacent wales of each series being caught in and embraced by the knit loops of the intervening wales of the other series and a fleecing yarn looped between the connecting threads. * * *

"5. A knit fabric, all of the knit loops of which appear in wales upon one side, the loops of said wales being drawn between the floats or connecting threads of the adjoining wales, and a fleecing yarn looped loosely through said connecting threads. * * *

"7. A knitted fabric, all of the knit loops of which appear in wales upon one side, the loops of said wales being drawn between and including a portion of the floats or connecting threads of the adjoining wales, and a fleecing yarn looped loosely through said connecting threads."

The defendants contend that the basic web of the patented fabric is not new. The defendants also claim that, the basic web being old, the addition of the supplemental or extra or fleecing or auxiliary thread, it being called by the one or the other of these names, in the mode and manner and for the purposes described, does not constitute invention. Considering the results attained and the utility of the fabric, and its popularity and large sales, all of which are established, I cannot agree with the contention of the defendants, and must and do hold that the patent is valid, and that the presumption of validity has not been seriously shaken, certainly not overcome.

The defendants make a fabric which has the same basic web, and which has the same supplemental or extra .or fleecing or auxiliary thread, its fabric inserted and woven in in the same way. There is no evidence Complainant's Exhibit No. 1, Defendants' Fabric, and it is conceded that this was made in or about the month of April, 1913, is not made in accordance with complainant's fabric patent. This seems to me to be identical with the fabric of complainant's patent. The witness Mason states in substance that the defendants' fabric consists of a basic web having on one face a series of longitudinal wales formed by a plurality of knitted loops, which appear to be knit alternately from two different yarns, or from the same yarn at different feeds, and at the back having meshes formed by the legs or floats connecting the loops of alternate wales. The basic web contains a plurality of supplemental fleecing threads or yarns, which lie between the wales on the face of the basic web and the meshes on the back of the same; the supplemental yarn being projected in the form of loops, which are pulled through the meshes at the back of the fabric. The witness also states, in substance, that in defendants' fabric the loops of the supplemental fleecing yarn are also found to some extent on the face of the fabric; that is, on the side showing the needle wales. The witness Mason says, and this court agrees with the conclusion, that the fact that in the defendants' fabric the auxiliary yarn has loops on the so-called face of the fabric in addition to the loops on the back does not avoid the conclusion in any way that defendants' fabric is within the claims of the patent in suit.

If the Steber fabric must be made with at least two body threads, and the defendants' fabric is made with one body thread only, it is possible and probable that infringement is avoided, if that is the only fabric made by the defendants, or the exhibit referred to the alleged infringing goods in evidence and conceded to have been made by the defendants is made with one body or web thread only. I am of the opinion that the Steber patented fabric is not necessarily made with two or more body yarns. The Steber patent says that the base fabric is formed of an alternating series of longitudinal wales knitted each from a different yarn, or from the same yarn at different times, if so desired. It is conceded that if the Steber patented fabric must necessarily be made on the machine shown in the patent No. 810,578, for knitting machines, that there would be used a plurality of yarns, one for each of the alternating series of wales. But the fabric is not confined to that machine, and nothing in the fabric patent in suit limits

the production of the fabric described in it to any particular machine or to any particular method. The fabric patent says that the inventor has produced the fabric in several ways. I do not think it is denied that the infringing goods in evidence does not have in it two body or base threads. The witness Mason is positive on this point and says:

"I have made a careful examination of this fabric since my former affidavit was executed, and I am now able to say that the basic web of said fabric is made of a plurality of yarns, and not of a single yarn."

It is also contended by the defendants that their fabric does not infringe, for the reason that it has supplemental loops, or more properly loops of the supplemental thread, not only on the mesh side or back of the goods, but, also to some extent on the face of the goods. It is self-evident that in the fabric made by defendants usually, if not always, more or less of the loops of the supplemental or extra or fleecing or auxiliary threat are found on both sides of the fabric, but very few of these loops comparatively appear on the front of the goods.

This patent is for a product, a knitted fabric, and if the defendants make the knitted fabric of the Steber patent in suit it is immaterial, in the opinion of this court, that they in manufacturing leave the supplemental thread in such shape that some loops are found on the front side of the goods, or that some supplemental or additional loops on the front side are added by any means. In my judgment the addition of this supplemental thread in such a manner as to leave some loops on the front side, as well as all the loops demanded by the Steber patent in suit on the back, does not avoid infringement. The appearance of the fabric is, of course, changed; but it is the Steber fabric with the same basic web and the same supplemental or extra thread added in substantially the same way, and the result is the same as in the Steber patent, except that some loops are added on the front side. The defendants' fabric comprises two alternating series of wales of knit loops, the connecting thread of adjacent wales of each series being caught in and embraced by the knitted loops of the intervening wales of the other series, and it has a fleecing yarn looped between the connecting threads.

The defendants' fabric is also described by claims 5 and 7 of the Steber patent in suit. The language of claims 3, 5, and 7 is broad, and in my judgment is broad enough to cover loops, comparatively few in number, on the face of the fabric. In any event, infringement is not avoided by the addition of some loops, comparatively few in number, on that side of the fabric. I think it immaterial what the knitted fabric of the patent in suit is used for, or for what use it is intended. The Steber fabric can be used for making underwear, or for making wash cloths and towels, and for many other purposes. The fabric made by the defendants can be used, also, for either or all of these purposes. I think, and hold, that all the claims of the Steber patent, No. 865,279, are valid, and 3, 5, and 7 are infringed by the defendants Random Knitting Company and George W. Cummings. I think it unnecessary to decide whether or not the claims other than 3, 5, and 7 are infringed.

There will be a decree as to the Steber knitted fabric patent No. 865,279, that it is valid, and that claims 3, 5, and 7 are infringed by defendants Random Knitting Company and George W. Cummings, but not by Gardner and Proctor, and that complainant is entitled to a decree for an injunction and accounting.

## The Machine Patent.

[3] The Steber patent, for knitting machine, No. 810,578, granted January 23, 1906, and applied for February 1, 1905, was evidently designed and patented to enable Steber to manufacture the fabric described in patent No. 865,279, and which was granted September 3, 1907, and which has just been considered. The claim 8 of this knitting machine patent, in issue, reads as follows:

"In a knitting machine, the combination with a cylinder, needles carried thereby, and a plurality of feeders for said needles, of means for projecting alternate needles up out of action, means for knitting with the alternate set of needles at every feeder, means for causing the sets of needles to interchange, and means for drawing loops of fleecing threads between the shanks of the needles raised out of position."

We have in combination a cylinder or its equivalent; (2) needles carried thereby and a plurality of feeders for said needles; (3) means for projecting alternate needles up out of action; (4) means for knitting with the alternate set of needles at every feeder; (5) means for causing the sets of needles to interchange; and (6) means for drawing loops of fleecing threads between the shanks of the needles raised out of position. This is a broad claim. Steber had previously invented, and he so states, a machine, patent No. 753,645, wherein and whereby the alternate needles are rendered inoperative at each feed, and the others operative, and in which the needles interchange from feed to feed.

In the patent in suit it would seem that Steber had in mind a combination with the needle operating mechanism shown in such earlier patent of mechanism designed to lay an auxiliary yarn around the needles in the cylinder and to carry such yarn inwardly between the needles so as to form loops in that direction. This was the conception of Steber, and claim 8, above quoted, is expressed in broad terms. This claim covers a machine designed to produce the fabric before referred to, and such claim calls for a novel co-operation of mechanism of a wide range. It devolved upon Steber to explain the principle of his machine, and the best mode in which he had contemplated applying that principle, so as to distinguish it from other inventions. It devolved upon him, also, to point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. He was to describe the mode of operation, and that particular combination of devices which distinguish it from other machines.

For a long time the operation of knitting has been accomplished by machines of, in many respects, different types. One is known as the spring needle machine, in which the needles are provided with a beard, and are fixed immovable in a cylinder, and the knitting operation is made possible by the rotation of the cylinder. The other type

of machine is known as the latch needle machine, in which the needles are provided with a hinged latch and are arranged in a stationary cylinder, but in such manner that the needles themselves are movable vertically. In this type the knitting operation is made possible by the vertical movement of the needles. Steber, in applying the principle of his invention and describing it, selected and used as the best mode for so doing the latch needle machine, the one where the needles have the hinged latch and the stationary cylinder, with the needles moving up and down. He did not confine himself to this type of machine. He infringes who uses the spring needle type of machine above mentioned, so arranged as to operate in substantially the same way and produce substantially the same result as does Steber by using and describing the latch needle machine shown in his drawings.

It is unnecessary, I think, to describe in detail the operation of the machine shown in the drawings. Steber has not limited himself to any specific mechanism for causing alternate needles to be operative only at a given feed, and interchanging the two sets of needles from feed to feed. Nor has Steber limited himself to any specific mechanism for forming loops of fleecing thread between the inoperative needles. Steber has been given a claim for a combination of means to do these things broadly. This was allowable and permissible, in view of the prior art. We have a new result. Steber utilizes for the knitting operation the alternate needles only at a given feed, and he makes the other half of the needles at that particular feed inoperative, and he also provides for the interchange of these two sets of needles from feed to feed, and in co-operation therewith he utilizes for the laying in and looping of fleecing thread parts that place such threads upon the needles and force it between the alternate needles in loops projecting through the meshes of the basic fabric and secure the fleecing thread between the needle wales and the connecting threads thereof. Here, in brief, we have the conception of the inventor. Both the latch and the spring needle type of knitting machines, of varied construction, were well known. Parts of machines adapted to these two types of machines are used to diversify their operation and the product, and were well known. Steber devises a new co-operative action between such mechanisms as would give the results he desired.

The validity of the Steber machine patent was not seriously contested on the argument. The defendants' alleged infringing machine is known as a circular spring needle knitting machine. It has a series of needles arranged on a cylinder in circular form. These needles in defendants' machine are not provided with latches, but their upper ends are recurved and terminate in spring extensions or beards. The cylinder of needles is rotated during the knitting operation, and the yarn is introduced beneath the beards and into the hook portions of the needles by the so-called sinker burr or stitch wheel. At a succeeding point in the circle of needles suitable parts are co-operatively arranged with the rotating needle bed to close the beards of the needles and afterwards to raise the previously formed loops from the shanks of the needles and cast off the loops. These operations are repeated at every feed in the machine, and the successive courses of loops are

formed row upon row to build up the fabric in the same manner, speaking broadly, as in the latch needle machines. The parts co-operating with the needles as above described to effect the knitting operations in its simplest form are the stitch wheel, already referred to, whereby the yarn is placed against the needles and within their beards. On the concave side of the rank of needles and slightly ahead of the stitch wheel is found a part called the push-down, a shoe-shaped piece of metal which crowds down on the shanks of the needles the loops placed upon them at prior feeds. At a point succeeding the stitch wheel just described is found in the machine a part called the plain presser, which is a piece of metal mounted on a stand with its edge pushing against the beards of the needles as they go by and closing the beards. Opposite this presser on the concave side of the array of needles is found a so-called landing wheel, which, set obliquely, meshes in with the needles and is adjusted to raise the loops near the bottom of the needle shanks up over the closed beards of the needles, and this action is supplemented by a similar action of the so-called cast-off wheel, which is similarly adjusted to raise these same loops over the upper ends of the needles and thus effect the knitting operation.

Aside from the usual parts already described in defendants' machine is found ahead of the stitch wheel a plush wheel or burr, which has a series of spaced wings provided with semicircular recesses whch are arranged to move between the needles as the latter rotate. Every alternate space between these wings is occupied by a pivoted finger, which fingers are so located that as the plush burr rotates the fingers bear against alternate needles of the bed. The auxiliary or fleecing yarn is fed through suitable guides to the recesses in the wings of the plush burr and back of the movable fingers. The plush burr is mounted in such manner that, as the needles rotate, the auxiliary yarn is introduced at such an angle and at such a height that the wings of the plush burr tend to throw this yarn over the top of each needle, but the movable fingers bear against each alternate needle and project above the same far enough to prevent the supplemental yarn being thrown over these needles. The wings mentioned serve to shove the fleecing yarn through the line of needles, so that loops of this yarn extend on the inner line of needles back of each alternate needle. Between this plush burr and the stitch wheel above described is a so-called clearance wheel, which acts to push the fleecing yarn down on the shanks of the needles and below their beards.

In defendants' machine, in lieu of the ordinary plain presser above described, is found a so-called "one and one cut presser wheel." This consists of a metallic disk on the edge of which are notches or openings alternately shallow or deep, and this disk is mounted on a suitable stand, so that these notches engage the beards of the needles as the needles rotate; the shallow notches closing the beards of every alternate needle, the beards of the other needles remaining open in the deep notches. The action of this one and one cut presser wheel thus results in the loops of body thread on the shanks of half the needles slipping within the beards as they are raised by the landing wheel previously described and not being cast off from these needles, and the knitting

operation is not there performed by those needles as it is by the others. The loops of fleecing thread, as well as the loops of body thread, are cast off the needles whose beards are closed. The one and one cut presser wheel is not shown to have been used ever in combination with a plush burr until the defendants so used it.

The question is: Is defendants' machine within claim 8 of the machine patent in suit? I think it clearly appears that the defendants' machine has in combination the same elements or devices, or their equivalents, as are found in complainant's machine, that defendants' machine has the same mode of operation, and that it accomplishes substantially the same result. The defendants' machine accomplishes the same result as complainant's, as it produces the same fabric, in all things identical, except it has the added loops on the wale side of the goods. Both machines have a cylinder for carrying the needles; both have needles mounted in such cylinder; both have a plurality of feeders for the needles. Defendants' machine has means for rendering alternate needles inoperative, and which means consist of a one and one cut presser wheel, which leaves open the beards of alternate needles where the knitting operation is effected, and makes such needles there inoperative. It has means for knitting with an alternate set of needles at every feed consisting of the well-known parts of spring needle machines and the one and one cut presser already mentioned. It has means for causing the sets of needles to interchange at every feed, consisting of an adjustment of the operative parts already mentioned to accomplish that result. It has means for forming loops of fleecing threads between the shanks of needles not then in operation.

Has the defendants' machine the same mode of operation as that described and claimed and covered by claim 8 of the patent in suit? The test of a machine is not its physical appearance, but the principle on which it works. The defendants' machine, being of the spring needle type, has a different appearance from the complainant's, described in the specification and illustrated in the drawings of the patent in suit, as that is of the latch needle type. I think it clear that Steber originated an operation of parts of knitting machines which accomplishes a new and useful result—a result that was desired. The defendants have worked out a similar operation of parts, differing in detail, but operating and acting on the same principle, and with the same result. The essence of the invention covered by claim 8 of the patent in suit is the utilizing for the operation of the alternate needles only at a given feed, and making the other half of the needles there inoperative, with proper adjustment for the interchange of these two sets of needles from feed to feed, and utilizing parts co-operating therewith that place fleecing thread upon the needles and force it between alternate needles then inactive in loops projecting through the meshes of the fabric and secure it between the needle wales and connecting threads thereof.

The defendants, in order to knit the fabric desired, formed of alternating series of wales with stitches all drawn toward the outside of the fabric and the loops forming each wale including a portion of the yarn which connects the loops of two adjacent wales at the back of the fabric, utilized the ordinary parts of spring needle knitting ma-

chines and combined therewith a so-called one and one cut presser wheel as already shown. This one and one cut presser wheel, by leaving open the beards on half the spring needles, prevents those needles from performing the knitting operation at that feed, which is precisely the needle operating plan of Mr. Steber. And this presser wheel, by closing the beards of the other half of the needles, allows the latter to perform the knitting operation precisely as in the Steber machine. The interchange of the operative and inoperative needles from feed to feed is accomplished in both machines alike merely by a suitable adjustment of the operative parts, so that the interchange is produced. Moreover, in defendants' machine each body thread, when introduced, is laid in front of both sets of needles and carried along just as in the Steber machine, and thus the connecting legs of each needle wale of the fabric are caught into the adjacent needle wale, forming diamond-shaped meshes at the back. So much for the parts for the knitting of the basic web.

In order to force the fleecing thread in loops between the shanks of every other needle, the defendants utilized a so-called plush wheel or burr, in the blades of which are semicircular openings to receive the auxiliary thread. In every other space between these blades are provided the movable fingers already described. These blades, meshing into the needles and placing the auxiliary thread over half the needles, thus force the auxiliary thread between every other needle in loops located as desired. In other words, the auxiliary thread is placed in front of the alternate needles about to operate, and these needles are utilized as posts between which loops of the fleecing thread may be conveniently carried. So that the blades of the plush burr act in conjunction with the alternate needles to locate loops of fleecing thread as desired, and secure such thread between the needle wales and connecting threads of the fabric exactly as do the equivalent parts of the machine described in the patent.

It has been said by the Circuit Court of Appeals in this circuit many times that "one who produces the same result by the use of devices operating in substantially the same way is an infringer. It matters not that the devices may differ in form, in appearance, and in the manner of operation. If they combine to do the same work in substantially the same way it is enough," provided you have substantially the same result. It is not contended in this case by the complainant that defendants have utilized the same precise means to accomplish certain results used by complainant. The contention is that mechanical equivalents have been substituted, such as are found in the other type of machine and as are necessary for its operation; such type of machine being adjusted to operate in the same manner by equivalent means to produce the same result accomplished by the complainant. It would make this opinion unnecessarily long to go in detail into comparisons of the different parts of the two types of machine. If the patentee has limited himself in his patent to the one type of machine, then he who uses the other type, properly adjusting it to accomplish the same result, does not infringe. But I think that Steber did not so limit himself, and that the defendants do infringe when they take a machine of the other

type and by making the necessary changes produce equivalents which in combination operating in the same way and upon the same principle produce the same result.

In my judgment the defendants infringe, and there will be a decree that the complainant's machine patent is valid, and that claim 8 is infringed by the defendants Random Knitting Company and George W. Cummings, and for an injunction and an accounting. As to the defendants Gardner and Proctor, I do not think infringement is made out, as they had no active part in the infringing acts. No great point was made during the trial, and I think the defendants Gardner and Proctor, while held not to be infringers, are not entitled to costs.