MAXIM MFG. CO. v. IMPERIAL MACH. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.  January 2, 1923.)

No. 3134.

1. **Patents ⟨⟩ 328—809,582, claims 1-4, and 942,932, claim 1, for potato-peeling mechanism, held valid and infringed.**

Claims 1-4 of the Robinson patent, No. 809,582, for a rotary disk for a potato-peeling machine, and claim 1 of the Robinson patent, No. 942,932 for an improvement in such device, *held* not anticipated, but valid and infringed.

2. **Patents ⟨⟩234—Claim for "flat" striated surface infringed by abradant surface with depressions; "stria;" "depression;" "rut;" "wrinkle;" "concave;" "cup;" "pocket;" "dimple."**

A patent calling for a horizontal, flat, striated surface is not confined to one having raised lines, with furrows between them, and is infringed by an abradant surface, full of little holes, cups, pockets, or concavities as "flat" implies levelness or horizontalness while "stria" means a furrow, channel or hollow, synonyms of which are "depression," "rut," "wrinkle," "concave," "cup," "pocket," or "dimple."

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Pocket; First and Second Series, Flat.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Imperial Machine Company and another against the Maxim Manufacturing Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Chas. Hills and Chas. Hills, Jr., both of Chicago, Ill., for appellant.

Wallace R. Lane, of Chicago, Ill., for appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. [1] In a suit by plaintiffs appellees, herein called plaintiffs, the court held that claims 1, 2, 3, and 4 of patent No. 809,582, and claim 1 of patent No. 942,932, were valid and infringed by defendant appellant, herein called defendant.[1]

[1] 1. In a device of the class described, an impelling and abrading member, comprising a rotary disk composed of a horizontal flat striated portion and a raised portion, extending from near the circumference inward and having two sides sloping down to the flat striated portion of said disk, substantially as described.

2. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a number of horizontal flat striated portions separated by raised portions at intervals extending from near the circumference inward, substantially as described.

3. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a horizontal flat striated portion and a rounded raised portion rising gradually from near the center toward the circumference, substantially as described.

4. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a horizontal flat striated portion, and a rounded raised portion bounded by two approximately radial edges extending from near the circumference inward and having a striated surface, substantially as described.

1. In mechanism of the character described, a rotary horizontal abradant member having a substantially flat abradant surface of broken crystalline

The defenses are noninfringement, equitable estoppel, laches, and invalidity. Eighty-seven patents are urged as representing anticipation in the prior art. Defendant also sets up a counterclaim, alleging unfair competition. The witnesses were before the court, and several potato-peeling tests, on behalf of defendant, were made in the presence of the court. After a careful examination of the evidence, we are of opinion that it amply supports the judgment of the court.

Out of the large number of anticipatory patents scheduled, a few are seriously urged. Remembering that all claims in issue are combination claims, it is at once apparent that the Dodge vegetable washer, No. 322,429, does not anticipate either Robinson patent. Admittedly it had no abrading surface. The slats on the bottom disk, shown in Fig. 2, are far different in kind, purpose, and operation from those described in the claims in issue. It does not appear that the Dodge machine was ever made or sold. The same things are true of the Lowe patents, German No. 84,102, and British No. 3040. They were for washing and not for peeling potatoes.

In the Jaeger patent, No. 524,420, the drawings and specifications show a cutting surface of blades, as distinguished from the rubbing surface in the Robinson patents. From its appearance in the drawings and the description in the specifications, it seems that, even if practical and efficient, the cost to construct would be prohibitive. It has never been upon the market nor made. Judging from the disk in the drawing, and the movement which it is said in the specifications is given to the potatoes, the agitation of the potatoes appears not to be given by humps or scoops, as in the Robinson device, but by the blades themselves. The surface of knives on the disk and sides of the container would have an effect upon potatoes similar to that of the stab metal or nutmeg grater surface in one of expert's reproductions of the Lehman machine operated in the presence of the trial court. They seem to have been unevenly and poorly peeled.

It is strongly urged that the Lehman patent, No. 91,238, clearly embraces all the features of the claims in suit. Defendant's expert McElroy had two machines made after what he said was the teaching of the Lehman patent, and with them peeled potatoes in the presence of the District Judge, who decided the case adversely to all of defendant's contentions there made. Those machines were before us at the argument. One has the stab metal face on the sides of the container, and on the face of the disk. In the other, the sides and disk are made of some abradant composition. Upon the face of the disk is a raised portion, extending from the outer edge of the disk, straight across to within about an inch of the center, and, as it lays upon the disk, presents a portion four inches long, with two beveled faces three-fourths of an inch wide. These are made to represent the elevation $N$ in the patent.

In the expert's affidavit, the similarity between the Lehman and the Robinson machines is largely based upon the expert's alleged repro-

material the surface being broken with a plurality of peripheral scoop-shaped humps or waves, said waves extending outwardly from a point intermediate of the center and periphery of the member.

duction of the raised portion on the disk shown in the drawing in the Lehman patent, which is not otherwise described in the specifications than, "This disk is provided with one or more elevations $N$." After making the statement, viz., "The structure of the 'elevation $N$' is very clear to me," he also says, "Although I am free to admit that there is room for a difference of opinion as to just what is shown." He then converts $N$ into a perforated rectangular piece of metal, bent up substantially as above described. The expert never saw a Lehman machine. His knowledge of it was gained from the patent, which was before the trial court, and is before us. The drawing is very simple, yet so small, and so lacking in the presentation of those dimensions necessary to a clear understanding, that no one can do more than guess at what $N$ was intended to be, and we are compelled, as the courts before us have done, to reject the interpretation which the expert himself has shadowed in doubt.

There is in evidence the Schaefer machine, that he testified was completed November 17, 1906, nearly two years after Robinson applied for patent No. 809,582, and, though he says he got the idea in 1903, no patent was applied for, and, although he had castings made for 800 machines, no person who purchased a machine from him and no user of such a machine was brought to testify. No use of the machine is shown. In 1911, Schaefer, in Chicago, interested other parties, and organized the Schaefer Manufacturing Company. The name was subsequently changed to the Sanitary Sectional Brush Company.

On the extreme edge of the Schaefer disk was a small hump. Schaefer says that one or more of such humps appeared on his disks, sometimes accidentally and sometimes by design. It was a machine with a flat disk, with one small hump on it, that he brought to the Schaefer Manufacturing Company; but the machine was almost immediately changed, so that it was wholly different in appearance, though the witness Smith said the mechanical action was practically the same. It is claimed that defendant is the successor of the Sectional Sanitary Brush Company, but the corporation papers show no connection. We find no similarity between the original Schaefer machine and plaintiffs' machine, except that Schaefer had the abradant surface, which defendant claims plaintiffs wrongfully took from Archer. If defendant's machine is a development of the Schaefer machine, the development has been away from the Schaefer form of disk and suspiciously strong towards that of the plaintiffs.

It is charged that plaintiffs abandoned the original Robinson striated disk surface, and took the Archer abradant, and only after that developed any sort of efficiency. There was a competitive test on government ship Hancock, which showed results very inferior to those of the Archer machine. Much stress is laid upon the time and outcome of that contest. When the test took place is left wholly uncertain. The only real light on the outcome of it is found in reported cases, from which it appears that on June 9, 1905, Archer applied for two patents —No 842,993, "process for attaching an abrading surface to metal," which was issued February 5, 1907; but No. 999,478, for a potato-peeling machine, was not issued until August 1, 1911, more than six

286 F.—6

years after the application. There were repeated rejections, and it was only after the Navy officials in charge of the peeling contest on the Hancock had reported how vastly superior the work of the Archer machine was to that of the Robinson machine that there was an allowance, solely because of that report.

It further appears that the facts of that competition first came before the court in Archer v. Imperial Machine Co., in 1913, where the contest was between the Archer and the Robinson patents. The facts disclose that the great difference shown between the accomplishment of the machines in the Navy test was rather accidental, because of an experimental change made by Robinson. The court there held that the better results shown did not constitute invention, and the case was affirmed by the Court of Appeals. Archer v. Imperial Machine Co. (D. C.) 202 Fed. 962; Id., 207 Fed. 81, 124 C. C. A. 638.

Archer made no claim at any time that he invented any material for an abradant surface. His first patent was for a process of attaching an abrading surface to metal, and the chief claim, as originally made in the application for the potato peeler, was on the arrangement whereby the disk turned one way and the container the other, as illustrated in the drawing. Whether that was used in the Navy competition does not appear.

The Robinson patents, belonging to plaintiffs, have been many times before the courts, and the cited prior art patents hereinbefore referred to, and many others, have been often considered and generally rejected. The Robinson patent, No. 809,582, was held to be a pioneer patent by Judge McPherson (note to 212 Fed. 959). That case was reversed by the Court of Appeals (Am. Fruit Machinery Co. et al. v. Robinson Machinery Co., 191 Fed. 723, 112 C. C. A. 313) solely on the construction of the word "flat." Defendant's disk there was a spiral one. Judge Mayer also held No. 809,582 to be a pioneer patent. Imperial Machine Co. v. Rees (D. C.) 261 Fed. 612; Imperial Machine Co. v. Am. Machinery Co. (D. C.) 276 Fed. 436. At page 419, 262 Fed., is a list of cases where patent No. 809,582 has been held valid and infringed. We note that, while reliance is placed on anticipation in the prior art to defeat plaintiffs' patent, yet that defendant has departed so far from the disk forms of the prior art patents that its disk has now become almost a Chinese copy of plaintiffs' disk.

We are of opinion that, as to form, the infringement cannot be questioned, and there remains as to No. 809,582 only the question as to whether the abradant surface used comes within the terms of the claims in suit. What Robinson invented was a practical machine that would and did successfully peel deep masses of potatoes. It was approved and accepted by the buying public. His discovery consisted in two material things, viz. that the peeling surface, to be efficient and economical, must be a rubbing and not a cutting surface, and that to deal with the mass of potatoes there must be a raising and rotary motion given to individual potatoes by the movement of the disk, and this latter result was accomplished by the presence of the raised portions of the disk.

[2] Defendant's insistence that a striated portion cannot be flat, and that a surface cannot be striated, unless it has long lines with valleys between, is erroneous, because well-known definitions of those words are much broader. The Century Dictionary defines "flat" as, "The flat part or side of anything, as the extended palm and fingers of the hand," and, "In the common use of the word, levelness or horizontalness is implied," "especially, a level plain, a field." While most of the disks before us are somewhat saucer-shaped, yet clearly there are large portions of their rough, abradant surfaces that would be called and are flat. "Stria" is defined in the Century Dictionary as a furrow, channel, or hollow. Among Allen's synonyms for "furrow" are depression, rut, and wrinkle, and for "hollow" are hole, concave, cup, pocket, dimple, etc., so that under the Century definitions, as well as under the Standard Dictionary definition, quoted in 262 Fed. 462, supra, the abradant surface used by defendant comes within the language of the claims here in issue. The inventor is not at all confined to raised lines with valleys between them, as shown in the drawing in the patent of the preferred form of disk. It is very apparent that both plaintiffs' and defendant's disks present an abradant surface full of little hollows, cups, pockets, or concavities, within the well-known understanding of those words, and we are of opinion that the abradant surface used by the defendant is an infringement of the "striated" portion of plaintiffs' claims, without the allowance of any equivalents permissible to plaintiffs.

Claim 1 of patent No. 942,932 here involved, in so far as disclosed by the record, has not been before the courts. An examination of the evidence relating to this claim compels us to affirm the judgment of the trial court that it was not anticipated by the Archer use, or the Archer patent, or otherwise, and also that it is infringed by defendant's disk. It appears that Robinson discovered difficulties entailing some loss in the peeling of small potatoes, that were ground up between the edge of the disk and the container sides, and it also developed that, by an improvement that would throw the small potatoes and all potatoes toward the center of the container, not only would the small potatoes be saved from being ground up, but the movement of the whole mass would be such that every potato would be peeled better and with less waste. To accomplish those purposes, an upturned lip was provided at the outer edge of the disk and the humps were made scoop-shaped. Starting at the top of the lip, the hump slopes down to the center of the disk, so that the potatoes are thrown upwards, and in towards the center. We are of opinion that this shows a useful advance in the art, and that the claim is valid and infringed.

The judgment is affirmed.