**DANGLER et al. v. IMPERIAL MACH. CO. et al.**

(Circuit Court of Appeals, Seventh Circuit. March 5, 1926.)

No. 3645.

**1. Patents ⊗═287—Ordinarily managing officers are not liable for corporation's infringements.**

In absence of some special showing, managing officers of corporation are not liable for its infringements, though committed under their general direction.

**2. Patents ⊗═287—Circumstances under which officers of infringing corporation are liable for infringements stated.**

When officers act willfully and knowingly, —that is, when they personally participate in corporation's manufacture or sale of infringing article (act other than as officers), or when they use corporation as an instrument to carry out their own willful and deliberate infringements, or when they knowingly use an irresponsible corporation with purpose to avoid personal liability, they are *held* jointly liable with it for infringement.

**3. Patents ⊗═287.**

Officers *held* not to have used irresponsible corporation in infringement of patent, so as to render them liable.

**4. Patents ⊗═312(3)—Evidence held not to show officers advanced money to corporation to enable it to infringe patent, so as to make them personally liable.**

Relative to personal liability of officers for infringement by corporation, evidence *held* not to show that they advanced money to enable it to infringe patent, rather than to tide it over, after it was enjoined, till final determination of infringement.

**5. Patents ⊗═287—Officers are not liable, where board of directors, on counsel's advice of no infringement, proceed with litigation and business.**

Situation for which officer may be held liable for infringements of corporation is not established by board of directors, on advice of reputable counsel that there was no infringement, proceeding with litigation and business.

**6. Patents ⊗═323—In view of complete termination of business, enjoining company's officers from future infringement held unauthorized.**

Officers of corporation should not be enjoined from further infringement, where evidence conclusively shows complete termination of company's business and disappearance of all possibility of future infringement.

**7. Patents ⊗═287.**

Officers of infringing corporation are not liable for its profits.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Imperial Machine Company and another against David Dangler, R. L. Lapham, and another. From a decree for plaintiffs, the named defendants appeal. Reversed, with directions.

George P. Fisher, of Chicago, Ill., for appellants.

Ralph M. Snyder, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellees brought this suit against the Maxim Manufacturing Company to restrain the further infringement of claims 1, 2, 3, and 4 of patent No. 809,582, and claim 1 of patent No. 942,932 (known as the Robinson patents), and to recover damages. A decree in their favor, entered in 1922, was affirmed by this court January 2, 1923. 286 F. 79.

Thereafter the Maxim Manufacturing Company was duly adjudged a bankrupt, and the present proceedings were instituted to fasten upon appellants a liability for the damages which resulted from the infringements by said Maxim Manufacturing Company, of which appellants were officers and directors. The decree in appellees' favor enjoined appellants "from directly or indirectly manufacturing, selling, or using * * * defendants' infringing vegetable paring or peeling machines," and decreed that "plaintiffs recover of defendants Maxim Manufacturing Company, David Dangler, and Ralph L. Lapham severally and jointly the profits derived by * * * reason of the infringement of said letters patent * * * from and after January 1, 1921, and from the said Maxim Manufacturing Company the profits derived prior thereto, and in addition to such profits to be accounted for by the defendants Dangler and Lapham the damages for like periods which plaintiffs have sustained by reason of said infringement of said Maxim Manufacturing Company, David Dangler and R. L. Lapham."

Only Dangler and Lapham appeal, and they attack that part of the decree which affects them. Appellees' position is that the Maxim Manufacturing Company had for several years been infringing its patents, and during a certain part of said infringement period it was bankrupt, to the knowledge of appellants, who as its officers and directors managed its affairs; that said company was in fact merely a shell, a sham corporation, unable to meet its financial obligations; that appellants lent the Maxim Company large sums of money for the purpose of continuing the infringements, and thereby be-

came parties principal, liable as well as the company for appellees' damages. The following facts were established:

Defendant company was organized July 1, 1914, under the name of the Sanitary Sectional Brush Manufacturing Company, which was changed the next year to the Maxim Manufacturing Company. Dangler was elected president October 18, 1917, resigned in 1918 for war work, returned in the latter part of May, 1919, was re-elected president, and continued to hold that office until January, 1923, when the company was adjudged a bankrupt. Lapham became secretary and treasurer in 1914, and continued to act as treasurer until January, 1923, and was secretary most of the time. Both appellants were directors nearly all of the infringement period. They were both small stockholders until 1921, when they increased their stockholdings to nearly 40 per cent. of the outstanding stock.

Suit was begun on these Robinson patents in 1916, when Illing was the president and principal stockholder. Another company made the machines at this time, and it carried on the pending litigation until about 1920. A reputable patent attorney advised the Maxim Manufacturing Company that its machine could be lawfully made, and the business was continued.

Respecting insolvency, it appears that the company continued in business down to January, 1923, at which time this court announced its opinion sustaining the Robinson patents and holding the Maxim Manufacturing Company as infringers. At this time about 40 to 50 per cent. of its business was in manufacturing and selling the patented potato peeling machines. Prior to this date, the credit of the company was apparently good, and it paid its obligations. A copy of the financial reports of the company is herewith reproduced:

| Date. | A Surplus per Books. | B Net Worth per Books. | C Net Worth Less Intangibles— (Patents, Good Will, etc.) |
|---|---|---|---|
| Jan. 1, 1917.. | 13,092.22 | 33,542.22 | 9,542.22 |
| Jan. 1, 1918.. | 12,415.09 | 35,915.09 | 9,665.09 (and less patterns) |
| Jan. 1, 1920.. | 3,705.36 | 27,955.36 | 14,276.48 (and less patterns) |
| Jan. 1, 1921.. | 2,005.05 | 35,265.05 | 15,582.46 (and less patterns) |
| Jan. 1, 1922.. | 1,789.22 | 36,579.22 | 5,875.82 (and less patterns) |

Footnote.—No balance sheet for the year 1922 is in evidence, but the profit and loss statement of January 1, 1923, shows an operating loss of $17,460.96 for the year 1922.

The business of the company fell off rapidly after the District Court decision in the early part of 1922, and the year ending January 1, 1923, showed a large loss. Loans were made by different officers of the company. The following chart shows the loans made by Dangler and Lapham and the Dangler-Lapham Company; also the number of infringing machines manufactured and sold:

Respecting the liability of officers of a corporation for its infringements of letters patent, the authorities are not in accord. The weight of authority, it seems, denies such liability in the ordinary case. That is to say, if the officers act merely as officers, they are not liable jointly with the corporation. It is only when the officers act outside the scope of their official duties that they be-

come liable. See cases cited below.[1] There are, however, numerous authorities that hold the managing officers liable for damages committed by the corporation in case of infringements. The enforcement of this liability is seldom sought, except in case of insolvency of the corporation.

These latter holdings are on the theory that the corporation commits the tort only under the direction of the managing officers, and therefore these officers, including the directors who authorize the manufacture and sale of the infringing devices, are liable. Hitchcock v. American Plate Glass Co., 259 F. 948, 171 C. C. A. 24; Eddy v. Kramer (D. C.) 247 F. 962; National Cash-Register Co. v. Leland, 94 F. 502, 37 C. C. A. 372. There are numerous cases which might be added to this list, where officers were held with the corporation, but they deal with activities of officers outside their official duties.

The latter view seems to have the support of the text writers. Robinson on Patents, § 912; Walker on Patents, §§ 410–412. This court has heretofore taken the position first announced, namely, that the officers are not liable unless they act outside the scope of their official duties. Cazier v. Mackie-Lovejoy Mfg. Co., 138 F. 654, 71 C. C. A. 104; Reed v. Cropp Concrete Mach. Co., 225 F. 764, 141 C. C. A. 90.

It may be successfully urged that this court in Reed v. Cropp Mach. Co., did not reaffirm the decision announced in Cazier v. Mackie-Lovejoy Mfg. Co., supra. In other words, the court was merely holding that, regardless of what the rule was respecting the officers' liability, the facts in that case made

it impossible for the officer to avoid the consequences of the corporation's repeated infringements.

[1] After due consideration of the various authorities, as well as the reasons back of the two positions, we adhere to the Cazier v. Mackie-Lovejoy Mfg. Co. decision, and hold that, in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction. The uncertainty surrounding the questions of validity and infringement make any other rule unduly harsh and oppressive.

[2] It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability—that officers are held jointly with the company. The foregoing are by no means cited as the only instances when the officers may be held liable, but they are sufficient for the present case.

[3] It is argued by appellees, however, that even under this limited liability rule, the officers are jointly and severally liable with the corporation in this case. In other words, it is alleged in the pleadings and contended before this court that the evidence discloses a situation where appellants, as officers, used the corporation—a mere shell; an irresponsible instrument—for the perpetration of their wrongs. With this contention we are unable to agree. In the first place, the Maxim Manufacturing Company was not a mere shell, but a substantial corporation, with assets in excess of its liabilities aggregating some $35,000. It was engaged in the manufacturing business, and either manufactured or sold the infringing machine. The appellants were but slightly interested financially. During practically the entire period of the infringement, the financial statement showed the corporation to be, not only solvent, but able to pay its stockholders in full, and to show a small surplus. It does not even appear that the capital was inadequate.

[4] Nor can we conclude that appellants advanced money for the purpose of enabling the company to infringe the Robinson patents. During the greater portion of the infringement period, that portion during which most of the infringing machines were manufactured and sold, appellants either lent the

[1] Cazier v. Mackie-Lovejoy Mfg. Co. et al., 138 F. 654, 71 C. C. A. 104; Reed v. Cropp Concrete M. Co., 225 F. 764, 141 C. C. A. 90; Weston Electrical I. Co. v. Empire Electrical I. Co. (C. C.) 166 F. 867; affirmed in 177 F. 1006, 100 C. C. A. 670; New Departure Mfg. Co. v. Rockwell-Drake Corp. (C. C. A.) 287 F. 328; Johns-Pratt Co. v. Sachs Co., 175 F. 70, 99 C. C. A. 92; Vapor Car Heating Co. v. Gold, etc., Co. (D. C.) 296 F. 201, 203; Steber Mach. Co. v. Random Knitting Co. (D. C.) 217 F. 796; D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236, 170 C. C. A. 304; Proudfit Loose Leaf Co. v. Kalamazoo L. L. B. Co., 230 F. 120, 144 C. C. A. 418; Western Electric Co. v. North Electric Co., 135 F. 79, 89, 67 C. C. A. 553; Farmers' Mfg. Co. v. Spruks Mfg. Co. (C. C.) 119 F. 594; Glucose Sugar Refining Co. v. St. Louis S. & P. Co. (C. C.) 135 F. 540; H. C. Cook Co. v. Little River Mfg. Co. (C. C.) 156 F. 676; Bowers v. Atlantic G. & P. Co. (C. C.) 104 F. 887; Panzl v. Battle Island (D. C.) 132 F. 607; United Nickel Co. v. Worthington (C. C.) 13 F. 392; Hutter v. De Q. Bottle Stopper Co., 128 F. 283, 62 C. C. A. 652.

Maxim Company nothing or a very small sum. It was during the year 1922 that the loans from Dangler, Lapham & Co. increased rapidly. This was the year when, by reason of the injunction granted in the District Court, the business of the Maxim Company was conducted at a great loss. It was fairly inferable that these loans were made, not to carry on the infringing business (for there was little or no business of any kind during that year), but to tide the company over until this court should finally determine whether the Robinson patents were valid and infringed by the Maxim machine.

This conclusion is confirmed by the fact that during this period, when the loans were increased, appellee was protected against loss through the infringements of the Maxim Manufacturing Company by a bond. The giving of this bond likewise tends to refute appellee's claim that the company was insolvent. Certainly the burden was upon the appellees to establish the allegations set forth in the supplemental bill, and this burden was not met merely by showing that, during a period of financial loss due to the destruction of its business, loans made by individuals, stockholders or officers, to the company increased.

[5] We conclude that the case is the usual one where a bona fide corporation embarked on a business which it found was covered by numerous patents. A competing concern insisted that it had a patent which covered one of its products. The Maxim Company sought and secured the advice of reputable counsel to the effect that its machine was not an infringement of the competitor's patents. Relying on this advice, the board of directors proceeded with the litigation and with the business. This showing falls far short of establishing any one of the situations for which the officer of the corporation may be held liable for the infringements of the corporation.

[6] The decree is assailable in other respects. On no theory of the evidence or the law has appellee been able to sustain those portions of the decree which enjoin appellants from further infringements, or which impose upon them liability for the profits of the Maxim Manufacturing Company. The evidence not only fails to show threatened infringements, but conclusively shows a complete termination of the company's business, and the disappearance of all possibility of future infringements. Equitable relief, such as an injunction against appellants, was not obtainable. If any liability existed, it was determinable in an action at law, triable by a jury.

[7] Likewise on no theory of the law were the officers liable for the corporation's profits. Elizabeth v. Pavement Co., 97 U. S. 140, 24 L. Ed. 1000; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 160 F. 966, 89 C. C. A. 26.

The decree is reversed, with costs, with directions to dismiss the bill as to appellees.