## CLAUDE NEON LIGHTS, Inc., v. FEDERAL NEON TUBE CORPORATION et al.

District Court, S. D. New York.
Aug. 13, 1931.

Bohleber & Ledbetter, of New York City (Wm. Bohleber, of New York City, and Francis H. Fassett, of Dayton, Ohio, of counsel), for plaintiff.

J. W. Friedman, of New York City (Harry Chaitovitz, of New York City, of counsel), for defendants.

PATTERSON, District Judge.

The suit is for infringement of Claude patent No. 1,125,476. At the trial the plaintiff proved the validity of the patent and also infringement thereof. The patent has been upheld in so many decisions that the defendants' attack on it was foredoomed to failure. The issue of infringement was contested by the defendants; their claim being that the neon tubes made and sold by the corporate defendant did not have electrodes with "an area exceeding 1.5 decimeters per ampere," in the language of the Claude patent. The proof was convincing, however, that the electrodes in several neon tube signs sold by the Federal were larger than this minimum. Accordingly I indicated at the close of the case that the plaintiff was clearly entitled to a decree against the corporate defendant. I reserved decision only as to the liability of the individual defendants Rose and Nale. The defendant Goldberg defaulted.

The facts bearing upon the individual responsibility of these defendants may be stated briefly. Rose and Goldberg began business in January, 1929, as partners in a concern called Federal Neon Light Company. This was six months after the decision of the Circuit Court of this circuit sustaining the validity of the Claude patent. Rose and Goldberg were notified by the plaintiff that they were infringing, a warning which they ignored. In March or April, 1929, the defendant corporation, Federal Neon Tube Corporation, was organized and took over the partnership business of Rose and Goldberg. Nale came in at this time and invested money in the enterprise. Along with Rose, he managed the business. Rose looked after the manufacturing, Nale looked after the financing. Nale at first owned 50 per cent. of the stock and later acquired the entire stock outstanding. Nale, Rose, and Goldberg were the first officers. Goldberg, and later Rose, dropped out, leaving Nale in sole control. As already indicated, I am convinced that in the neon signs sold by the company the electrodes exceeded the permissible area per ampere, and infringed the Claude patent. The inference is compelling that all three individual defendants knew this to be the fact, but recklessly went ahead with their infringement, counting on not being brought to book for some time, and, if worst came to worst, retreating behind the corporation and asserting personal nonliability. Nale testified that he took the advice of patent counsel, that he gave orders that no infringing tubes should be manufactured or sold, and that he did not know much about what went on in the factory. This testimony I do not credit. If any such order was given, Nale knew that it was being disobeyed. In short, the proof shows that Rose and Nale used the corporation, whose financial stability is doubtful, merely as a cover for their own scheme of infringement.

Under such a state of facts, the decree for an injunction and an accounting should run against the individuals as well as against the corporation. The case is controlled by the decision of the Circuit Court of Appeals in Claude Neon Lights, Inc., v. American Neon Light Corporation, 39 F.(2d) 548. It is unnecessary to consider which rule represents the law, that laid down in National Cash-Register Co. v. Leland (C. C. A.) 94 F. 502, or that adhered to in Dangler v. Imperial Machine Co. (C. C. A.) 11 F.(2d) 945. Even under the latter rule which is more favorable to corporate directors and officers, the individual defendants here would be held responsible.