**THE DRINK GROUP, INC., Plaintiff,**

v.

**GULFSTREAM COMMUNICATIONS, INC., Drink Magazine, LLC., Todd K. Holmes, and Louis A. Amoroso, Defendants.**

No. 98 C 0078.

United States District Court,
N.D. Illinois,
Eastern Division.

July 23, 1998.

Steven Lee DeGraff, Katz, Randall & Weinberg, Chicago, IL, Jane M. McFetridge, Brittain, Sledz, Morris & Slovak, Chicago, IL, JoAnne S. Redmann, Bloom & Kreten, Sacramento, CA, for Plaintiff.

Wendi Sloane Weitman, Gayle L. Yeatman, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, for Defendants.

**OPINION AND ORDER**

NORGLE, District Judge.

Before the court is Defendants Holmes and Amoroso's Motion to Dismiss. For the following reasons, the motion is granted.

## I. BACKGROUND

Plaintiff The Drink Group, Inc. holds a U.S. trademark registration number for the trademark "Drink." Plaintiff uses this trademark as the signature name for its restaurant/bar businesses in Chicago, Illinois and Las Vegas, Nevada. Defendants, on the other hand, publish "Drink Magazine," a national periodical, which, in part, provides information about the quality of alcoholic beverages. Defendant Drink Magazine, LLP. holds the supplemental registration mark on the "Drink Magazine."

On January 7, 1998, Plaintiff filed a complaint against Defendants Gulfstream Communications, Inc., Drink Magazine, LLC, Todd K. Holmes, and Louis A. Amoroso, claiming, among other things, trademark infringement. Plaintiff seeks to hold Defendants Holmes and Amoroso individually liable on the grounds that they were "a principal of and a driving force behind" the allegedly infringing "Drink Magazine." (Compl. at 2.) Plaintiff avers that Holmes and Amoroso incorporated the publication as "Drink Magazine LLC." (*Id.* at 5.)[1] Plaintiff further contends that all "Defendants wilfully continue to market and sell their magazine under its infringing name." (Compl. at 8.)

Defendants Holmes and Amoroso assert that these allegations fail to establish a cognizable claim under Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

For purposes of Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir.1997). At the same time, however, the court is not required to

---

1. The court notes that Holmes and Amoroso are listed as executive vice-presidents of Drink Magazine, which is published by Gulfstream Communications, Inc. (Compl.Ex. E.)

accept conclusory allegations. *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 792 (7th Cir.1996). " 'It is true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. Nevertheless, a plaintiff must allege sufficient facts to outline a cause of action, proof of which is essential to recovery.' " *Stevens v. Umsted,* 131 F.3d 697, 700 (7th Cir.1997) (*quoting Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir. 1985)). With these principles in mind, the court turns to whether Plaintiff's complaint contains sufficient allegations to hold Holmes and Amoroso liable in their individual capacities.[2]

The Seventh Circuit, in the seminal case of *Dangler v. Imperial Mach. Co.,* 11 F.2d 945, 947 (7th Cir.1926), discussed whether corporate officers could be held personally liable for infringement by their corporation:

> [I]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction.... It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability—that officers are held jointly with the company.

Despite the passage of years, *Dangler* is still the law of this Circuit and cited approvingly by subsequent courts. *See Panther Pumps & Equip. Co. Inc. v. Hydrocraft, Inc.,* 468 F.2d 225, 233 (7th Cir.1972) (holding officers personally liable only when acting outside the scope of their duties); *Weller Mfg. Co. v. Wen Prod., Inc.,* 231 F.2d 795, 801 (7th Cir. 1956); *Cooper Industries, Inc. v. Juno Light-*

*ing, Inc.,* 1 U.S.P.Q. 1313, 1313–14 (N.D.Ill. 1986); *Eversharp, Inc. v. Fisher Pen Co.,* 204 F.Supp. 649, 676 (N.D.Ill.1961).[3]

Additionally, *Dangler* is in accord with the most recent decisions of the United States Court of Appeals for the Federal Circuit. In *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1411 (Fed.Cir.1996), the court explained:

> [A]cts of a corporate officer that are within the scope of the officer's responsibility are not always sufficient grounds for penetrating the corporate protection and imposing personal liability. The policy considerations that underlie the corporate structure yield to personal liability for corporate acts only in limited circumstances.
>
> In general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong. This general rule does not depend on the same grounds as piercing the corporate veil, that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization. When personal wrongdoing is not supported by legitimate corporate activity, the courts have assigned personal liability for wrongful actions even when taken on behalf of the corporation. However, this liability has been qualified, in extensive jurisprudence, by the distinction between commercial torts committed in the course of the officer's employment, and negligent and other culpable wrongful acts.
>
> Thus, when a person in a control position causes the corporation to commit a civil wrong, imposition of personal liability requires consideration of the nature of the wrong, the culpability of the act, and whether the person acted in his/her personal interest or that of the corporation.

(Internal citations and quotations omitted.)

Here, Plaintiff fails to allege any facts which demonstrate wrongdoing by the indi-

---

**2.** Although it makes no difference in the final analysis, it is unclear whether Plaintiff's theory of personal liability rests on Holmes and Amoroso's conduct as incorporators, executive-vice presidents, or both.

**3.** The court notes that *Dangler* involved patent infringement, unlike this case, which alleges trademark infringement. However, there does

not appear to be any rationale which justifies a different approach to holding corporate officers personally liable for patent infringement as opposed to trademark infringement. *See e.g., Sparks Tune-Up Ctrs., Inc. v. Panchevre,* No. 90 C 4369, 1992 WL 211029, at *6 (N.D.Ill. Aug.21, 1992).

vidual Defendants. The mere fact that Holmes and Amoroso incorporated Drink Magazine, LLP. is innocuous in the absence of allegations that, at the time of incorporation, they were motivated by some improper purpose or acting outside the scope of their corporate duties. In other words, Plaintiff's averments fall woefully short of the "special showing" requirement in *Dangler*. Plaintiff's remaining allegations against Holmes and Amoroso regarding continuing infringement and their roles as the "principal" and "driving force" behind the infringement, are similarly unavailing. These conclusory statements, standing alone, run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts. *Panaras*, 74 F.3d at 792.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss Holmes and Amoroso.

IT IS SO ORDERED.