### GENERAL MOTORS CORPORATION et al. v. PROVUS.
### No. 6680.

Circuit Court of Appeals, Seventh Circuit.
Dec. 15, 1938.

James R. McKnight, of Chicago, Ill., for appellant.

Franklin D. Trueblood and Craig R. Johnson, both of Chicago, Ill., for appellees.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

In a suit for patent infringement and unfair competition, the General Motors Corporation and its subsidiary, Ternstedt Manufacturing Company, appellees herein, obtained a decree against the defendants, consisting among others of the Franklin Die Casting Company and its corporate officers. The decree found infringement and unfair competition, awarded an injunction and granted an accounting against the corporation and its officers personally. Max Provus, sole appellant, is here on an appeal which challenges only the accounting part of the decree imposing personal liability upon him for damages realized from the enjoined acts. The basis of appellant's assignment of errors goes to the proposition that the court erred in not holding that he came squarely within the rule announced by this court in Dangler v. Imperial Mach. Co., 7 Cir., 11 F.2d 945.

The following facts are established from the transcript of the record, which includes inter alia the evidence and the findings of the court concerning the appellant, Max Provus.

For several years prior to 1932, the defendant, Lester K. Franklin, worked as salesman for the Faith Manufacturing Company, which made die castings and radiator ornaments. In 1932, he went into this business for himself under the name of the Franklin Manufacturing Company. In the fall of 1932, he moved his plant to the building of appellant, his father-in-law. In February of 1933, primarily through the financial efforts of Max Provus, Franklin was able to carry on the same type of business under the name of the Franklin Die Casting Company, a corporation created by Franklin, Max Provus and three other relatives.

The defendants infringed four of plaintiffs' design patents for ornamental radiator caps for 1932, 1933 and 1934 Chevrolet, and 1933 Buick, automobiles. Although the transcript of the record is not clear as to the beginning of the infringement and unfair competition period, the findings of the court through the Master and the decree based thereon show that the defendant, Lester K. Franklin, had manufactured and sold the infringing devices, while he was in business for himself. It is undisputed that the Franklin Die Casting corporation indulged from the beginning of its corporate existence in infringing and unfair practices.

As to the character of the practices engaged in by the corporation, it might be well to quote from the findings of the Master: "The long continued imitation and the repeated copying of each model reveal * * * an attitude * * *. Ornaments manufactured by Franklin Die Casting Company * * * were sold as Chevrolet or Buick ornaments. * * * Such conduct would deceive the ordinary buyer * * * there was a constant and repeated imitation of plaintiffs' designs as each appeared on the market * * * the imitation ornaments * * * were advertised and sold * * * as Chevrolet and Buick parts * * *." These findings are supported by the evidence in the case.

As to Max Provus' activities in regard to the corporation, it is shown that without his help the corporation could not have been created and continued. He put $30,000 into the business and supplied the building for the plant rent-free. Although disclaiming control of the corporate policies, he acquiesced in them. He read the reports of the corporation and visited the plant three or four times a year. From conversations with Lester K. Franklin, he knew that the recently organized corporation, and Franklin alone prior to its creation, was engaged in the manufacture and sale of Chevrolet and Buick radiator caps. From his observations, he knew that this business of the corporation was profitable, and he stated that he stayed in the business only because it was profitable. He testified that he started the business by giving the money to Lester K. Franklin and that he had put over $30,000 into the company. In return for his part in getting the corporation started, he was made a director and treasurer of the corporation. Lester K. Franklin was made a director and president. All other directors and officers were relatives except director Herzl Amdur,

holder of 10 shares of stock, who was an employee of the corporation.

These five men comprised the Board of Directors throughout the infringement and unfair competition period. Only one directors' meeting had ever been held and no change in the officialdom had ever taken place. Although they were the only stockholders and interrelated officers of the corporation, they were only vaguely familiar with the corporate structure, their respective stockholdings and their corporate duties. For instance, the change in form from the Franklin Manufacturing firm to the Franklin Die Casting corporation did not affect the personal control of the business by the defendant, Lester K. Franklin; the defendants neither knew the exact amount of their stockholding nor exhibited any familiarity with corporate functions in general; and the appellant was treasurer from the beginning, but professed no knowledge of this corporate office.

In Dangler v. Imperial Mach. Co., 7 Cir., 11 F.2d 945, this court laid down the rule that being an officer of a corporation does not of itself make the officer personally liable for its infringements. However, the court was careful to point out that a particular factual situation may work an exception to the rule. The court said at page 947: "It is when the officer acts willfully and knowingly,—that is, * * * when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, * * * that officers are held jointly with the company".

The appellant insists that the district court erred in not applying the general rule as announced in the Dangler Case. In other words, the thesis of appellant's assignment of errors is that the court was in error in finding that the officers used the corporation as an instrument to carry out their own willful and deliberate infringements.

Taking the record as a whole, there can be no doubt that the facts tend to indicate a preconceived and deliberate conduct on the part of the officers to use the corporation merely to carry on the infringing and unfair practices and that these practices constituted conduct so palpable and so alien to the purpose of a bona fide corporation that from this alone it might be concluded that the conduct was willful, deliberate and personal on the part of the officials. It is impossible for this court to believe appellant's professions of innocence and inactivity. His actions during the life of the corporation conflict with his professions of innocence and inactivity, and the inference is compelling that appellant's part in the illicit conduct of the corporate business is very suggestive of wrongful premeditation and design.

It is our opinion that the conclusion reached by the trial court was warranted and that the proven facts and legitimate inferences clearly show the case falls within the exception to the general rule laid down in the Dangler Case.

The decree is affirmed.