## GENERAL MOTORS CORPORATION et al. v. FRANKLIN DIE CASTING CO. et al.

### No. 13745.

District Court, N. D. Illinois.

June 18, 1941.

Zane, Trueblood & Johnson, of Chicago, Ill., for plaintiff.

J. R. McKnight, Isadore Kaplan, Lee J. Gary, D. B. & H. Levy, and Frank E. Shudnow, all of Chicago, Ill., for defendants.

SULLIVAN, District Judge.

November 15, 1940, leave was granted Bruns & Collins, one of the defendants in the above cause, and one of the dealers who sold the infringing ornaments here in suit, to file its motion seeking an order to have costs taxed on June 13, 1940, apportioned in proportion to the extent of its participation in the infringement and unfair competition.

November 18, 1940, plaintiffs filed their motion to strike.

December 12, 1940, leave was granted Bruns & Collins to file a supplement to this motion, pursuant to the provisions of Rule 60 subdivision of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. On the same day plaintiffs asked that their former motion to strike stand as a motion to strike the supplemental motion.

December 12, 1940, a like motion was filed on behalf of Max Provus, Julius A. Franklin and Louis B. Shamberg, to have the costs apportioned as to them. To this plaintiffs have filed a motion to strike, on the ground that the court is without jurisdiction to now apportion the costs.

The original suit was brought against the Franklin Die Casting Company, a corporation, and a number of its officers individually, the manufacturer of all of the infringing ornaments, and against Bruns & Collins, one of the dealers who sold some of the infringing ornaments. Bruns & Collins, one of the nine defendants (Sally Franklin Gerber having been dismissed by the order January 6th, 1938,) were found to have infringed only two of the patents involved by the sale of the infringing ornament. No charge of manufacturing was made against them, the evidence showing that approximately 750,000 of the ornaments were manufactured and sold by the Franklin Die Company (now insolvent) and by its officers. Bruns & Collins claim to have sold about 600 of the infringing ornaments, representing a gross profit of not to exceed $380, and plaintiffs are now insisting that Bruns & Collins pay the entire costs involved in proving all the issues against all of the defendants, in many of which issues Bruns & Collins were not alleged to have been interested, such as the issues involving conspiracy, and the personal liability of certain defendants who were acting as officers of the Franklin Die Casting Company.

The case was referred to a Master who found, among other things, that the patents sued on were valid and infringed, and that the defendants were guilty of unfair competition; and that certain defendants, not including Bruns & Collins, were guilty of conspiracy, and that the officers of the Franklin Die Casting Company, named as defendants in the original complaint, were individually liable for the acts of the corporation. After a hearing on exceptions to the Master's report, a decree was entered in the cause on January 6, 1938, which decree provides:

"5. That this cause be, and the same hereby is, referred to Jacob I. Grossman, Esq., one of the Masters in this Court, to determine from the record of the present

case, and such other evidence as may be adduced before him, and to state,

"1. The amount of the gains and profits realized by the defendants Franklin Die Casting Company, Lester K. Franklin, Julius K. Franklin, Max Provus, Louis B. Shamberg, Bruns & Collins, Inc., Morton J. Franklin, Harry Gerber, Allen H. Amdur and George Sebastian, and each of them, by reason of the infringement of said claims of said letters patent, and by the unfair competition as aforesaid; and

"2. The amount of any and all damages which the plaintiffs have sustained by reason of the infringing acts of the said defendants and the unfair competition as aforesaid; and

"3. Whether or not, under the circumstances of the case, the damages which the plaintiffs may have been found to have sustained should be increased, to state the amount of such increase, if any; and this cause is retained in this court for the report of said Master and disposition thereof and such relief thereon as this court may determine. * * * And the Master is directed to report thereon with all convenient speed."

In the case of Simmons Co. v. Grier Bros. Co., 259 U.S. 82, 42 S.Ct. 196, 198, 66 L.Ed. 475, the Supreme Court held that a decree in a suit for patent infringement and unfair competition, dismissing the bill as to the former ground, and granting a permanent injunction as to the latter, but leaving the case pending for an accounting before a master is an interlocutory decree as an entirety, saying:

"But a bill of review is called for only after a final decree—one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it. If it be only interlocutory, the court at any time before final decree may modify or rescind it.

> \* \* \* \* \* \*

"The decree * * * although following a 'final hearing,' was not a final decree. It granted to plaintiffs a permanent injunction upon both grounds, but an accounting was necessary to bring the suit to a conclusion upon the merits. An appeal taken to the Circuit Court of Appeals, whose jurisdiction, under Section 129, Judicial Code [28 U.S.C.A. § 227], extended to the revision of interlocutory decrees granting injunctions, followed by the decision of that court reversing in part and affirming in part, did not result in a decree more final than the one reviewed. The prayer for relief based upon infringement of patent and that based upon unfair competition in trade were but parts of a single suit in equity. The decree entered pursuant to the decision of the appellate court did not bring the suit to a conclusion for either purpose. As to unfair competition, it evidenced a quasi definitive decision in plaintiffs' favor, but an inquiry before a master still was necessary before final decree could pass; an inquiry not formal or ministerial, but judicial in order to ascertain the amount of damages to be awarded. As to the claim of patent infringement, the decree evidenced a quasi definitive decision averse to plaintiffs, which, if nothing occurred to prevent, would in due course be carried into the final decree. But it did not constitute a separation of the cause, nor dismiss defendant from the jurisdiction for any purpose; necessarily this decision remained in abeyance until the cause should be ripe for final decree; there was nothing to take the case out of the ordinary rule that there can be but one final decree."

In the instant case only the question of Provus' personal liability was before the Circuit Court of Appeals, General Motors Corp. v. Provus, 7 Cir., 100 F.2d 562; neither infringement nor unfair competition were presented to or considered by the court, and as in Simmons Co. v. Grier Bros. Co., supra, the decision of the Circuit Court of Appeals did not result in a decree more final than the one reviewed. A judicial inquiry before a Master is still necessary in order to ascertain the amount of damages to be awarded before a final decree may be entered. I am sure if plaintiffs desired to have the accounting before the Master carried on, they would urge, and with right, that the court had jurisdiction to so order. Counsel for plaintiffs admits that "the true situation in reference to this decree is that although technically and for some purposes an interlocutory decree, for most purposes, including the determination of costs, the decree is final." The court believes that if it retains jurisdiction for any purpose, then the parties remain within its jurisdiction.

In Perfection Cooler Co. v. Rotax Co., 296 F. 464, the Circuit Court for the Second Circuit held that although an appeal from an interlocutory decree may settle

for all practical purposes points such as title, the decree is not final in a technical sense because it does not terminate the litigation, saying:

"Defendant in suit for infringement of patent cannot appeal from an order adjudging him guilty of contempt and fining him for the use of the plaintiff, until after final decree, and in this connection a final decree is one that terminates the litigation, and it is immaterial that an interlocutory order for all practical purposes finally adjudicates most important points, title and infringement."

True, as counsel for plaintiffs argues, the decree of January 6th, 1938, was appealed and affirmed by the Circuit Court of Appeals. Max Provus was the sole appellant, and he challenged only the accounting portion of the decree which imposed personal liability upon him for gains and profits realized from the enjoining acts, and assigning as error the finding of the District Court that the officers of the Franklin Die Casting Company used the corporation as an instrument to carry out their own wilful and deliberate infringements. The Circuit Court of Appeals [100 F.2d 564], affirmed the decree of the District Court, saying that "the conclusion reached by the trial court was warranted" and further saying:

"Taking the record as a whole, there can be no doubt that the facts tend to indicate a preconceived and deliberate conduct on the part of the officers to use the corporation merely to carry on the infringing and unfair practices and that these practices constituted conduct so palpable and so alien to the purpose of a bona fide corporation that from this alone it might be concluded that the conduct was willful, deliberate and personal on the part of the officials. It is impossible for this court to believe appellant's professions of innocence and inactivity. His actions during the life of the corporation conflict with his professions of innocence and inactivity, and the inference is compelling that appellant's part in the illicit conduct of the corporate business is very suggestive of wrongful premeditation and design."

The appeal was on a question in which Bruns & Collins had no interest, and Provus' personal liability alone was decided. The assignment of errors prays that the decree of the District Court be reversed as to Provus and dismiss the bill as to him. Neither the question of unfair competition nor patent infringement were before the Circuit Court of Appeals, and the question of costs or their apportionment was never before it, and for anything Bruns & Collins knew at that time the costs would be taxed against the Franklin Die Casting Company and the individual defendants who had used the corporation to carry on the manufacture of the infringing ornaments. No reference is made to costs in the opinion of the Circuit Court of Appeals handed down on December 15, 1938, General Motors Corp. v. Provus, 7 Cir., 100 F.2d 562, and yet on March 11, 1940, plaintiffs filed a motion asking that a time be set for a hearing regarding the taxing of costs. The District Court allowed this motion and subsequently entered an order taxing the costs against the defendants, and it is now discovered that the Franklin Die Company is bankrupt and plaintiffs are seeking to recover the entire costs in the sum of $2,018.79 from Bruns & Collins, who claim to have sold only a negligible number of the infringing ornaments.

Bruns & Collins are asking this court, not to disallow or limit the amount of the costs, but to apportion among the defendants the costs already taxed and allowed. The court agrees that it has no discretion in the fixing of the amount of costs to be taxed, nor to revise that amount once it has been taxed, but that it does have discretion to apportion costs which have theretofore been taxed. The court is of opinion that the decree in the instant case is an interlocutory decree only in which it retained and has jurisdiction to hear the motion of Bruns & Collins to apportion costs.

In Bassick Mfg. Co. v. Larkin Automotive Parts Co., D.C., 23 F.2d 92, 93, Judge Lindley said: "Consequently, being a decree awarding a perpetual injunction in a patent suit, but including an order of reference to a master to ascertain the damages suffered because of the infringement, it is unquestionably only interlocutory, and not final, * * *."

June 13, 1940, this court denied the motion of Bruns & Collins to retax costs, and ordered that plaintiffs recover their costs in the sum of $2,018.79. At that time the court was under the erroneous impression that the decree of January 6, 1938, was a final decree rather than interlocutory.

Counsel for plaintiffs argues that a decree which has been appealed and af-

firmed by the Circuit Court of Appeals, as in the instant case, cannot be tampered with, and in support of this contention cites the case of Home Indemnity Co. v. O'Brien, 6 Cir., 112 F.2d 387, where the Circuit Court of Appeals said that a District Court was without power to alter a judgment affirmed by the Circuit Court of Appeals by adding a provision for interest from the date of the institution of the suit to the date of judgment. In that case the appellee had obtained a judgment for $25,000 on a surety bond, and on appeal the judgment was affirmed. Subsequently the District Court entered an order correcting and amending, and thus altering the judgment of the Circuit Court of Appeals. This is not the same question involved in the case at bar.

In this connection, the court is at a loss to understand the constant references in plaintiffs' brief to "tampering with a decree". This court does not understand that it has been asked to "tamper with" or even to modify, amend or alter an existing judgment of the Circuit Court of Appeals. What it is asked to do is to apportion costs, already taxed, among the various defendants in a case still pending here because the decree is an interlocutory one, and until a final decree is entered the case is not entirely disposed of. In fact the court takes some exception to the statement of plaintiffs' counsel in his brief, at page 9, where he says, referring to the District Judge who amended the judgment of the Circuit Court of Appeals in the case of Home Indemnity Co. v. O'Brien, supra; "Thereafter, the District Judge, apparently yielding to the seductions of the Attorney General, and without the permission of the Circuit Court of Appeals, tampered with the judgement previously appealed by adding a provision for interest." Such a statement in this court regarding a United States District Judge in another District is, to say the least, unbecoming a practitioner at this bar. I

have carefully read all of the cases cited by the plaintiff where the various courts had considered the question of altering, amending, or modifying a decree or judgment, but in none of them do I find the expressions "tamper with" or "truckle" as used by plaintiffs' counsel in this case.

On December 12, 1940, motions were filed on behalf of Max Provus, Julius A. Franklin and Louis B. Shamberg, asking that the court apportion the costs in this case, which motions are also still pending.

March 12, 1941, motion was filed on behalf of George Sebastian, doing business as American Nickel Works, asking to have the costs in this cause apportioned, where, under oath, Sebastian set out that he does not know and never has known Isadore Kaplan, the attorney who entered his appearance in the original case; that he never employed, retained or consulted with the said Kaplan, and that the filing of his appearance was done without his knowledge or consent. That he was never notified of any hearings in this cause and therefore never attended any or had an opportunity to defend himself. That he had no knowledge of the decree entered in this case on January 6, 1938, nor of its provisions, and that the first time he was apprised of the decree was in the latter part of December, 1940, when an execution for costs was served upon him. That he thereupon made search for one Allen Amdur, who was the only one of the defendants with whom he had ever had any business relations, but was unable to locate him. That he then employed one Sol. R. Malkin, who had been his attorney for many years, to represent him in the matter of the collection of costs. That he now finds that Kaplan has left Chicago, taking his files with him, and that he is no longer practicing law here.

On April 23, 1941, Sebastian filed a motion asking leave to withdraw his previous motion to apportion costs, which this court also has still under advisement.