WELLER MANUFACTURING COMPANY, a limited partnership consisting of the following general partners: Carl E. Weller, Emily I. Weller, Everett C. Weller, and Robert E. Miller, Plaintiff-Appellee,

v.

WEN PRODUCTS, INCORPORATED, and Nicholas T. Anton, Defendants-Appellants.

No. 11115.

United States Court of Appeals Seventh Circuit.

March 30, 1956.

Charles B. Cannon, Carl S. Lloyd, Robert E. Burke, Chicago, Ill., Daniel V. O'Keeffe, Chicago, Ill., Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., Wallace & Cannon, Chicago, Ill., of counsel, for defendants-appellants.

John Rex Allen, Chicago, Ill., Charles R. Fenwick, Thomas B. Van Poole, Washington, D. C., Schroeder, Hofgren, Brady & Wegner, Chicago, Ill., Mason, Fenwick & Lawrence, Washington, D. C., of counsel, for plaintiff-appellee.

Before LINDLEY and SWAIM, Circuit Judges, and PLATT, District Judge.

LINDLEY, Circuit Judge.

■ Defendants appeal from a judgment entered in pursuance of the District Court's opinion reported in Weller Mfg. Co. v. Wen Products, Inc., 121 F. Supp. 198, in which the court held reissue patent 23,619 of August 13, 1946 valid and infringed. Inasmuch as the trial court has fully and carefully considered and disposed of the questions of fact, and described the claims of the patent, the nature and method of operation of the patented device and complicated electrical matters involved, under well-known governing principles, we might well dispense with further elaboration. We say this, because, inasmuch as Judge Barnes had before him in a 9 days' trial, the extended controversial testimony of expert witnesses on behalf of the respective parties, as well as that of the patentee, certain witnesses skilled in technical learning and other witnesses concerning certain pertinent factual matters, in addition to extensive documentary evidence, models and other physical exhibits, the rule we announced in Hazeltine Research, Inc., v. Admiral Corp., 7 Cir., 183 F.2d 953, certiorari denied 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650, is applicable to the present situation. In other words, just as, in that case, we felt that, in view of the conflicting testimony of expert witnesses and other controversial testimony, we were not at liberty to deny the applicability of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C., so here, after an examination of the record and consideration of the conflicts between the witnesses, we have no right, we think, to redetermine the findings of fact of the District Court or to say, as a matter of law, that they are clearly erroneous. The circumstances of this case take the issue out of that category of decisions where the evidence consists entirely of documentary evidence, such as Lewyt Corporation v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605, and Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, certiorari denied 339 U.S. 915, 70 S.Ct. 575, 94 L.Ed. 1340. Inasmuch as there was substantial and adequate evidence, though controverted, to support the findings, we might well terminate this opinion at this stage. However, defendants have so zealously argued various alleged errors of law and fact upon the part of the District Court that we feel impelled, in deference to their argument, to add our comment upon the contentions made.

Defendants ask us to re-examine these issues: whether the claims are valid; whether any valid claim is infringed; whether defendants have acquired intervening rights by reason of their assertion that Claim 3, the only claim of the reissue patent appearing in the original grant, is not infringed or is invalid, and whether the reissue is invalid because of the addition of new matter, or because, as they say, its claims are indefinite and functional, or because it is "a broadened reissue applied for more than two years after the issuance of the original patent." They seek also to have set aside the finding that the infringement was wanton and willful, and that defendant Anton, an officer of the defendant corporation, was personally responsible for it.

■ In attacking the finding of validity, defendants assert that the trial court erroneously inferred and held that "the idea of using copper in the soldering tip in which heat was to be generated" was new with the patentee and that the court built its finding upon this false premise and upon the patentee's provi-

sion that the heating tip be made of smaller cross-section than the secondary winding of the transformer; and wrongfully evolved an elaborate theory of operation which is not within the conception disclosed in the original patent, or inherent in the original disclosure. We might well dispose of this postulate by saying that this finding resulted from examination of controverted questions of fact. The District Court's opinion, supplemented by extended detailed formal findings of fact, we find, fully discloses the court's reasoning in this respect and was justified by the record. Thus, the court expressly found that the provisions for the structure of the device in suit were inherent in the patentee's original disclosure, and examination of the record shows complete justification, we think, for the court's conclusion that the patentee disclosed a new and sharp departure from the former prevailing concept, in which the recognized defect arose from the storing of heat to an extent highly undesirable and deleterious in the operation and use of soldering guns because of the use of high electrical resistance material. The evidence was such as to justify the finding that Weller provided a heating element which, for the first time, served as both heating element and soldering tip, avoiding any reservoir for storage of large quantities of heat, for the reason that, by his novel construction and operation, in his device he substituted low electrical resistance material for the high resistance material of the prior art. Rather he succeeded in producing and supplying such quantities of heat as were needed, without creating any undesirable surplus. He eliminated the large body of metal, filled with heat, of prior devices, making use of a step-down transformer and a small copper peen. This was a new concept which produced a new result.

The evidence, we think, completely justifies the conclusion that the theory of operation described in the reissue patent constituted a correct exposition of the inherent method of operation of the device disclosed in the original patent. The testimony of plaintiff's expert was in itself sufficient to support the court's finding in this respect. And, in this respect, we think he was corroborated by the testimony of defendants' expert on cross-examination. The patentee originally suggested the advisability of the use of copper, with its low resistant qualities, as the essentially desirable element. In this respect, the District Court aptly said that the idea of using copper in the tip was directly contrary to typical thinking at that time in regard to the use of copper in electrical circuits. We think it clear that Weller suggested originally that, to overcome the defects in earlier soldering irons, copper was necessary in the tip, for the reason that it is a good conductor, offers relatively little resistance to the flow of current, avoids the storing up of unnecessary amounts of heat, and thus eliminates the undesirable feature of a material slow to heat and slow to cool which had led to dissatisfaction with earlier devices.

Though the court may have believed that each of the elements in the patented device was old, it does not follow that the combination was unpatentable. We need not elaborate upon the rule that a novel combination of old elements which so cooperate with each other so as to produce a new and useful result or a substantial increase in efficiency, is patentable. See Lewyt Corp. v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Blaw-Knox Co. v. Lain Co., 7 Cir., 230 F.2d 373. Thus, the Board of Appeals in its decision expressly found that the prior art did not disclose any approximation of the combination called for by the claims of the original patent.

In this connection, defendants insist that the accused device does not infringe claim 3, and criticize the District Court's conclusion to the contrary. In its essence, defendants' argument is that their structure does not include any of the elements of the tip-mounting structure mentioned in claim 3, and that the doctrine of equivalents cannot be resorted to

in order to expand the claim, since they were the details patentee relied upon in order to distinguish that claim over the prior art, and that to ignore these limitations of the claim would result in it being the same as claim 17 of the original Weller application which had been rejected and cancelled.

■ An examination of the record convinces us that this argument is specious. Without going at length into the details of the construction of the infringing device, we direct attention to the District Court's finding, upon conflicting expert testimony, that claim 3 of the reissue patent "reads directly on defendants' devices, except that the spaced fixed plugs" in those devices "have a longitudinal rather than a transverse recess for receiving the offset portions of the soldering tip and the threaded takeup means are threaded on rather than in each fixed plug." "Defendants, however," said the court, "get the same result of rigidly securing the tip to the ends of the secondary winding extensions in substantially the same way as that of the patent in suit, and both the form of connector terminal mentioned in this claim and that incorporated in defendants' devices are the full mechanical equivalent of each other, and are both well known to the art." The evidence supporting plaintiff's theory justifies this finding and we think permits of no conclusion other than that defendants' device amounts to the equivalent of the combination of elements recited in the claim; that the court did not ignore any of the limitations of the claim; that defendants' arguments regarding file wrapper estoppel are based on fallacious reasoning, and that the finding of infringement is clearly in keeping with our decision in O'Brien v. O'Brien, 7 Cir., 202 F.2d 254 as well as with the Supreme Court's decision in Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. See also Ingersoll Milling Machine Co. v. General Motors Corp., 7 Cir., 207 F.2d 42. Further discussion of details bearing upon this phase of the case is unnecessary because of our approval of what was said by the trial court in this respect.

■ Defendants insist that in view of Statute, 35 U.S.C. § 252, and in view of the fact that claim 3 was the only claim of the original patent retained in the reissue, they have acquired intervening rights under that statute; in other words, that between the time of the original patent and that of the reissue patent, they had begun the manufacture and sale of their devices and that, under the statute, they are vested with certain intervening rights. It is apparent that the argument has no application if claim 3 is valid and infringed, as the District Court found and as we agree, for claim 3 of the reissue is identical with claim 3 of the original patent. As we said in National Rejectors, Inc., v. A. B. T. Mfg. Corp., 7 Cir., 184 F.2d 612, 614, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659: "Inasmuch as original Claim 1 with its original limitations has been preserved in the reissue patent without change, no estoppel can grow out of the reissue insofar as this claim is concerned." Consequently, the validity and infringement of claim 3 by the accused device is a complete answer to defendants' argument concerning intervening rights.

■ Defendants contend that the reissue patent is invalid because of added new matter. The statute provides, 35 U.S.C. § 251: "No new matter shall be introduced into the application for reissue", and defendants argue that new matter was added, both to the specifications and the claims of the reissue patent. Obviously, a patentee is not forbidden to add as new material in a reissue patent a description of the inherent function and mode of operation disclosed in the original patent. Thus, in Giant Powder Co. v. California Powder Work, 98 U.S. 126, at pages 136–137, 25 L.Ed. 77 the Supreme Court said: " 'If the last patent differs from the first only in stating more clearly and definitely the real principles of the invention, so that

those who wish to pirate it may not be allowed to escape with impunity through the imperfection of the language used in the first, there has arisen one of the cases for which it was the intention of the act of Congress to provide, and the objection is worthless in point of law.'" See also Eames v. Andrews, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064. This principle we followed in Hazeltine Research, Inc., v. Avco Mfg. Co., 7 Cir., 227 F.2d 137, certiorari denied 76 S.Ct. 474. Furthermore, we are of the opinion that an applicant for reissue may fully describe his original invention and include in his new description and claims not only what was described before, but also what was suggested or implied in the original drawings, specifications and models. Inasmuch as the justified finding of the court was that the reissue patent included only the inherent function and mode of operation of the original patent, it follows that no new matter was introduced. The cases cited by defendants in this connection, we think, are inapposite on their facts.

 Defendants insist also that the reissue patent is invalid because the claims are too broad and were too long delayed in their filing, relying upon Section 251 of the Patent Codification Act, c. 25, 35 U.S.C. § 251, which provides that no reissue patent shall be granted enlarging the scope of the claims of the original patent, unless applied for within two years of the grant of the original patent. Of course, if the reissue claim is broadened beyond the original in an essential respect, it is too broad, as defendants assert. In other words, reissue claims may not be expanded beyond their original inherent scope. However, under the court's findings and conclusions, justified by the record, we think the argument is inapplicable to the present case. The District Court in its findings answers the argument completely in its statement: "Defendants further contend that the transformer in defendants' soldering gun does not have secondary 'turns' but has less than one turn in the secondary. The difficulty with this ar-

gument is that we are not studying mere 'words'. We are studying the application of electricity, and from that viewpoint there is no difference between 'turns' and 'turn'. Each has reference to a secondary winding in a transformer." This was the court's conclusion after hearing conflicting factual testimony. The court added: [121 F.Supp. 206] "Is the patent in suit a broadened reissue? The court is of the opinion that, viewed from the standpoint of the construction of electrical transformers, there is no difference in the meaning of the words 'turn,' 'turns,' 'winding,' and 'windings.' They may be used interchangeably. Accordingly, the patent in suit is not a broadened reissue." We shall not enlarge upon further details in this respect but content ourselves with the comment that we find nothing in the record to justify a conclusion upon our part that the court's findings that the claims of the reissue patent were not broadened beyond those of the original patent were clearly erroneous. Rather, we think it obvious that where they differ from the original claims, they are narrower.

Defendants, in their briefs in this court, rely upon certain specific prior art, including the patents to Helle, 1,-802,079 and 1,816,115; that to Siemens (German) 389,309; the one to Tugendhat (French), 787,065, and that to Cannell, 445,648, and certain technical literature in evidence. Helle's devices had to do with soldering machines for soldering tin cans. Neither of his patents specifies the material of the heating part, and the later one, which was for an improvement on the earlier, discloses that heating is uniform along the horizontal section of the heating part in both patents. In other words, the court was perfectly justified in finding from the controverted evidence that this uniform heating throughout the length of the horizontal section could be obtained only if it were made of high electrical resistance material. This, plaintiff's evidence showed, could not include copper, a low resistance material, the element

employed by Weller, but had to be a high resistance material. We think the court properly distinguished the Helle patents from the devices involved here.

Siemens, cited by the Patent Office Board of Appeals, was described by that board as "a soldering tool of quite different construction." It added that the disclosure of the structure of the patent was "quite indefinite." Siemens did not prescribe the copper tip of the patentee, but, in his device, an examination of the evidence justifies the conclusion that heat was generated and stored for soldering. It disclosed an entirely different concept from that of Weller.

As to Tugendhat, the court had before it the benefit of the testimony of both experts as to the proper explanation to be given to this patent, and found that no device was ever made under it; that it employed a heating element of very high resistance material; that the device submitted by the defendants as being within the teachings of Tugendhat implied a heating element of low electrical resistance material, and that all that was left of Tugendhat in the produced device "was the handle." We are not impressed with defendants' argument that the court did not understand Tugendhat's device. We think it clear that the latter's heating element consisted of a high electrically resistant material and not a low resistance material, such as copper, and that it was merely an example of the prior art, "American Beauty Soldering Iron." We agree with the District Court there was no teaching in the Tugendhat patent to support defendants' position.

Cannell, No. 445,648, did not involve a soldering gun at all, but a branding iron which, the District Court found and as the record indicates, failed to disclose or teach anything anticipating the claims. It did not recognize or solve the problems dealt with by the patent in suit. True, Cannell prescribed that the branding plate be made thickest in the middle, but it seems clear that this was merely an attempt to provide a uniform temperature to all the letters on the branding iron, and had no significance in the solution of the problem confronting Weller.

The technical literature, we think, is of little importance. One treatise taught merely that no metal is a perfect conductor. It did not negate the evidence in the record that copper is generally considered the best of the readily available conductors. Another offered a purely theoretical textbook calculation of comparative heating in completely impractical high specific resistance and copper sections over 6 feet long. We find nothing in any of this literature suggesting a combination such as Weller offered, which, the trial court has found, employs a completely unique mode of operation. We agree that the patent was not anticipated, and that the status of the prior art was such that Weller's device achieved a new and desirable result by the combination of old elements cooperating in a new manner, which constituted invention.

There remains the question of whether Anton, chief officer and manager of the defendant corporation, should have been held personally liable for willful infringement. This individual admitted that he was at all times in control of the administrative and managerial policy of the corporation. He had before him the Weller device when he designed his infringing gun, which he deliberately made identical with Weller. We think he is plainly liable, under our decisions in Dangler v. Imperial Machine Co., 7 Cir., 11 F.2d 945, and General Motors Corp. v. Provus, 7 Cir., 100 F.2d 562, and that the evidence fully justified the court's conclusion that Anton used the corporation as an instrument to carry out his own willful and deliberate infringements.

Finding no prejudicial error in the record, the judgment is

Affirmed.